Chief Judge Fuld.
This appeal calls upon us to determine whether jurisdiction was validly acquired over one of the defendants, Hilton Hotels (U. K.) Ltd., a British corporation (hereafter referred to as Hilton [U. K.]).
The plaintiff alleges that in 1963 when he was on a visit to England he fell and was injured in his room at the London Hilton Hotel while attempting to take a shower in an “ ovular ”, modernistic type bathtub. He seeks $150,000 in damages not only from the defendant 'Hilton (U. K.) but also from the defendants Hilton Hotels Corporation and Hilton Hotels International, both of which are Delaware corporations doing business in New York. The defendant Hilton (U. K.), which is the lessee and operator of the London Hilton Hotel, has moved (pursuant to CPLR 3211, subd. [a], par. 8), for an order dismissing the complaint against it on the ground that the court lacks jurisdiction of the defendant’s person.
Both parties argue that “ the applicable statute” is CPLR 302 (subd. [a], par. 1) which authorizes our courts to exercise personal jurisdiction over a foreign corporation if it “ transacts any business within the state ” and the cause of action asserted against it is one “ arising from ” the transaction of such business. (See, e.g., Longines-Wittnauer v. Barnes & Reinecke, 15 N Y 2d 443; Lewin v. Bock Laundry Mach. Co., 16 N Y 2d 1070; *536 Gutfreund v. Russ, 16 N Y 2d 637.) However, the plaintiff does not allege that he had any dealings at all with the British corporate defendant or its agents in this State. Therefore, it may not be said that his cause of action arose from the British corporation’s transaction of any business here, and he is not entitled to avail himself of CPLB 302 (subd. [a], par. 1) in order to bring the defendant within the jurisdiction of our courts. (See Kramer v. Vogl, 17 N Y 2d 27, 31-32.)
Jurisdiction was, however, properly acquired over Hilton (U. K.) because the record discloses that it was “ doing business ” here in the traditional sense. (CPLR 301; see Public Administrator of County of N. Y. v. Royal Bank of Canada, 19 N Y 2d 127; Bryant v. Finnish Nat. Airline, 15 N Y 2d 426; Taca Int. Airlines v. Rolls-Royce of England, 15 N Y 2d 97; Tauza v. Susquehanna Coal Co., 220 N. Y. 259; International Shoe Co. v. Washington, 326 U. S. 310.)1 As we have frequently observed, a foreign corporation is amenable to suit in our courts if it is “ engaged in such a continuous and systematic course of ‘ doing business ’ here as to warrant a finding of its ‘ presence ’ in this jurisdiction.” (Simonson v. International Bank, 14 N Y 2d 281, 285; see, e.g., Bryant v. Finnish Nat. Airline, 15 N Y 2d 426, 430, supra; Berner v. United Airlines, 3 N Y 2d 1003; Elish v. St. Louis Southwestern Ry. Co., 305 N. Y. 267; Tauza v. Susquehanna Coal Co., 220 N. Y. 259, supra.) Although “mere solicitation” of business for an out-of-state concern is not enough to constitute doing business (Miller v. Surf Props., 4 N Y 2d 475, 480; see International Shoe Co. v. Washington, 326 U. S. 310, 315, supra), due process requirements are satisfied if the defendant foreign corporation has “ certain minimum contacts with [the State] such that the maintenance of the suit does not offend ‘ traditional notions of fair play and substantial justice ’ ”. (International *537 Shoe Co. v. Washington, 326 U. S. 310, 316, supra; see Simonson v. International Bank, 14 N Y 2d 281, 286, supra.) In Bryant v. Finnish Nat. Airline (15 N Y 2d 426, 432, supra), the court declared that the “ test for £ doing business ’ * * * should be a simple pragmatic one ’ ’ and, applying that test, went on to hold that the requisite minimum contacts with New York were made out when it appears that the defendant foreign corporation, an airline, “ has a lease on a New York office, * * * employs several people and * * * has a bank account here, * * * does public relations and publicity work for defendant here including maintaining contacts with other airlines and travel agencies * # * transmits requests for space to defendant in Europe and helps to generate business.” In the case before us, these same services are provided for the defendant Hilton (U. K.) by the Hilton Reservation Service which has a New York office, as well as a New York bank account and telephone number. The Service advertises that it was 11 established to provide the closest possible liaison with Travel Agents across the country ”, that lodging “ rates for certified wholesalers and/or tour operators [could] be obtained [from the Service] on request ” and that it could “ confirm availabilities immediately * * * and without charge ’ ’ at any Hilton hotel including the London Hilton. Thus, it does ‘ ‘ public relations and publicity work” for the defendant Hilton (IT. K.), including‘[1] maintaining contacts with * * * travel agents ’ ’ and tour directors; and it most certainly ‘ ‘ helps to generate business ” here for the London Hilton — which, indeed, was the very purpose for which it was established. Moreover, unlike the Bryant case (15 N Y 2d 426, 432, supra), where the defendant’s New York office did not make reservations or sell tickets, the Hilton Reservation Service both accepts and confirms room reservations at the London Hilton. In short — and this is the significant and pivotal factor—the Service does all the business which Hilton (U. K.) could do were it here by its own officials.
The defendant’s reliance on Miller v. Surf Props. (4 N Y 2d 475, supra) is misplaced. In that case, we held that the activities of a “ travel agency ” were not sufficient to give our courts in personam jurisdiction over a Florida hotel when the agency’s *538 services ‘ ‘ amounted to little more than rendering telephone service and mailing brochures ’ ’ for the hotel and 30 other independent and unassociated Florida establishments (4 N Y 2d, at p. 481). Indeed, in Bryant (15 N Y 2d 426, 431, supra), we found it significant that in the Miller case the New York activities were carried on ‘[1] not [by] an employee of the defendant [Florida hotel] but an independent travel agency representing defendant in New York City.” Although, in the case before us, the Hilton Reservation Service is not the “ employee” of Hilton (U. K.), the Service and that defendant are owned in common by the other defendants and the Service is concededly run on a “ non-profit ” basis for the benefit of the London Hilton and other Hilton hotels.
It is to be borne in mind, contrary to certain intimations in the dissenting opinion, that this appeal deals with the jurisdiction of our courts over a foreign corporation rather than the liability of a parent company for the acts of a wholly owned subsidiary. (Cf. Walkovzky v. Carlton, 18 N Y 2d 414.) The “ presence ” of Hilton (U. K.) in New York, for purposes of jurisdiction, is established by the activities conducted here on its behalf by its agent, the Hilton Reservation Service, and the fact that the two are commonly owned is significant only because it gives rise to a valid inference as to the broad scope of the agency in the absence of an express agency agreement such as the one which existed in the Berner case (3 N Y 2d 1003, supra).
We are not unmindful that litigation in a foreign jurisdiction is a burdensome inconvenience for any company. However, it is part of the price which may properly be demanded of those who extensively engage in international trade. When their activities abroad, either directly or through an agent, become as widespread and energetic as the activities in New York conducted by Hilton (U. K.), they receive considerable benefits from such foreign business and may not be heard to complain about the burdens.
Since, then, Hilton (U. K.) was “ doing business ” in New York in the traditional sense and was validly served with process in London, as provided by statute (CPLR 313), our courts acquired “ personal jurisdiction over the corporation for any cause of action asserted against it, no matter where the events occurred which give rise to the cause of action.” (Public *539 Administrator of County of N. Y. v. Royal Bank of Canada, 19 N Y 2d 127, 130, supra.)
The order of the Appellate Division should he affirmed, with costs, and. the certified question answered in the affirmative.
Breitel, J. (dissenting).
The court is in agreement that personal jurisdiction cannot be extended over the defendant, Hilton Hotels (IT. K.) Limited, a British corporation, under the provisions of New York’s long-arm statute (CPLB 302, subd. [a], par. 1). Disagreement arises only over whether personal jurisdiction may be extended under ‘t traditional ’ ’ concepts of doing business in the State or by reason of the foreign corporation’s “presence” in the State (CPLB 301[1]). The difference in application of the two .statutes determines whether judicial jurisdiction may be extended over a nondomiciliary to causes of action which arose outside the State as distinguished from those which arose in the State. The present case involves a tort which occurred outside the State.
The traditional concept, of course, had its finest articulation in Judge Cardoeo’s opinion in Tauza v. Susquehanna Coal Co. (220 N. Y. 259). Since then rather settled lines of distinction or tests have demarked reasonably well the basis upon which such jurisdiction rests (e.g., Miller v. Surf Props., 4 N Y 2d 475; Elish v. St. Louis Southwestern Ry., 305 N. Y. 267, 270-271; Sterling Novelty Corp. v. Frank & Hirsch Distr. Co., 299 N. Y. 208, 210-212; Yeckes-Eichenbaum v. McCarthy, 290 N. Y. 437, 444; Gaboury v. Central Vermont Ry. Co., 250 N. Y. 233, 238; Holzer v. Dodge Bros., 233 N. Y. 216, 221; see Simonson v. International Bank, 14 N Y 2d 281, 285; cf. Hanson v. Denckla, 357 U. S. 235, 251; International Shoe Co. v. Washington, 326 U. S. 310, 320). But, in recent years, undoubtedly under the liberating and liberal philosophy of long-arm jurisdiction, the traditional basis for personal jurisdiction over foreign corporations allegedly doing business here has been stretched to cover a variety of unusual situations (Public Administrator of County of N. Y. v. Royal Bank of Canada, 19 N Y 2d 127; Bryant v. Finnish Nat. Airline, 15 N Y 2d 426; Taca Int. Airlines v. Rolls-Royce of England, 15 N Y 2d 97).
*540 The occasion for disagreement in this case is the extension of personal jurisdiction over a foreign corporation simply because of its relationship with subsidiary or affiliated corporations of a parent corporation. Moreover, such jurisdiction is extended in the absence of fraud, misrepresentation, or intermingling of activities of separate corporations. Before considering the particular facts of this case it should be observed that important policy and commercial considerations are involved in preventing or allowing business enterprise to limit liability, suability, and exposure to governmental regulation, by the creation of truly separate corporate entities, with or without separate ownership structures, but especially where the ownership is not identical. These considerations are particularly important for a country engaged in world-wide trade and investment, often in the less developed countries of the world, because of the encouragement or discouragement to risk capital and the exposure to reciprocal treatment of jurisdictional bases in foreign countries.
The personal injury negligence tort of which plaintiff complains occurred in an English hotel in London resulting from a fall in the bathtub. Plaintiff is a New York resident who was then on tour in England. The hotel is operated by a British corporation, Hilton Hotels (U. K.) Limited, all but one of the shares of which are owned by Hilton Hotels International, Inc. International is a Delaware corporation owning directly or through subsidiaries a large number of hotels in countries outside the United States mainland. The stock of International is owned in part by Hilton Hotels Corporation, the American parent of the widespread Hilton Hotel enterprises. Both Hilton Hotels and International, although affiliated, have somewhat different stock ownership, with shares in each listed and available on public stock exchanges. Associated with this complex is an affiliate, Hilton Credit Corp., providing credit card financing and distribution and a hotel reservation service, in New York and elsewhere. This latter corporation is jointly owned by Hilton Hotels Corporation and International.
There is no claim by plaintiff that the Hilton complex or any of its components is used to defraud, deceive, or mislead those who deal with it, or that there has been any failure in the operation and management of the several corporations to keep their *541 internal affairs and management separate and distinct. It is contended and it is undisputed that the advertising and soliciting for business by the Hilton enterprises is done by offering the several respective services of the affiliated hotel corporations, reservations services, and credit card facilities, in common advertising.
The pivotal, but disputed, assertion upon which the present decision depends is that the Hilton Credit Corporation in handling reservations for the British corporation “does all the business which Hilton (U. K.) could do were it here by its own officials ’ ’.
In this connection the majority would distinguish Miller v. Surf Props. (4 N Y 2d 475, supra) on the ground that here there is a local acceptance of reservations for the out-of-State hotel accommodations. In the Miller case a reservation service was also involved and during off-season periods it “ accepted ” reservations, subject to final confirmation, for its principal. At all times it received reservations, and during slack periods its receipt was the equivalent of acceptance by the hotel. Nevertheless this court held that no more than solicitation of business was involved and, therefore, the Florida principal was not subject to judicial jurisdiction in this State. The fact that the reservations “accepted” by the agency in Miller could be disavowed by the principal, although they were, at least during slack seasons, for all practical purposes “final”, should not be a critical distinction. As a matter of commercial practice there are many independent agencies servicing the hotel, theater, and athletic event businesses which receive “ blocks ” of accommodations for sale and acceptance without the need for verifying availablity with their principals, or thereby subjecting their principals to judicial jurisdiction through them.
But more important, there is no support in the record for the assertion that the Hilton Reservation Service “both accepts and confirms room reservations at the London Hilton”. As established by the brochure of the Reservation Service and the affidavit of the vice-president of Hilton International, the ReseA vation Service only “ confirm[s] availabilities” at various hotels (not merely Hilton hotels) “ based on forecasts supplied by the hotels ”. As a matter of fact, the affidavits supplied by plaintiff do not contradict this assertion but only equivocate *542 that the reservations “ are taken and culminated right here in New York City ”, whatever the word “ culminated ” may mean in this context. The local activities of the Reservation Service, then, are similar to those of the agency in the Miller case. There, the “Resort Service ” would he “notified by [a] hotel as to the extent of availability of space ”. Unless the hotel had informed the Service to the contrary, it would, in turn, inform inquiring customers that “ reservations are available ” (4 N Y 2d, supra, p. 479).
That in the Miller case a wholly separate enterprise was involved is not the distinction, unless, of course, the separateness of parent and subsidiary corporations is to be wholly ignored, a position which the majority purportedly disavows, but yet takes by “ inference ”.
As recognized, the solicitation or mere promotion of business for an out-of-State enterprise does not constitute the doing of business in the State (Miller v. Surf. Props., 4 N Y 2d 475, supra; Elish v. St. Louis Southwestern Ry. Co., 305 N. Y. 267, 269, supra; Yeckes-Eichenbaum v. McCarthy, 290 N. Y. 437, supra; see International Shoe Co. v. Washington, 326 U. S. 310, 314, supra). This is traditional law and there is no avowed intention to change it. On the other hand, the maintenance of localized activities in the State has, of course, been the basis for asserting personal jurisdiction (see, e.g., Elish v. St. Louis Southwestern Ry. Co., 305 N. Y. 267, supra; Sterling Novelty Corp. v. Frank & Hirsch Distr. Co., 299 N. Y. 208, supra). The majority bridges the gap between these two rules by finding that separate but affiliated corporations perform the localized services, albeit local services of the narrowest scope, on behalf of the foreign corporation and, therefore, the foreign corporation is performing the localized services here, thus subjecting it to personal jurisdiction. This, of course, is a non sequitur, unless there is no power or privilege on the part of business enterprises to limit and segregate their assets, liabilities, and suability, if done, in fact, and if done without fraud or deception, by the utilization of separate adequately financed corporations, either subsidiary or affiliated.
The law has been that business enterprises do have that power and privilege (see Compania Mexicana v. Compania Metropolitana, 250 N. Y. 203, holding that a foreign subsidiary is not *543 present in New York even when it is under the complete control and domination of a foreign parent, present here, which conducts the New York business, 250 N. Y. at 210). In recent years, on the basis of quite narrow distinctions, there have been some small extensions. Thus, in Taca Int. Airlines v. Rolls-Royce of England (15 N Y 2d 97, supra) the rule was denied application on an arguable but admissible finding that the foreign principal corporation had not kept its activities and management of the local subsidiary corporation distinct. As a consequence the local corporation was held to be a direct arm of the foreign corporation and the latter was deemed suable here (see, also, Rabinowitz v. Kaiser-Frazer Corp., 302 N. Y. 892). A clearer and parallel situation was involved in Public Administrator of County of N. Y. v. Royal Bank of Canada (19 N Y 2d 127, supra). There the local foreign corporation, over which jurisdiction was in dispute, was no more than a holder of certain bank accounts for the parent foreign corporation (which indisputably was doing business in New York) which indistinguishably handled all of the banking activities in which both corporations were engaged. The Royal Bank case, then, is a clear example of the situation where there has been insufficient formal separation of the activities of the parent and subsidiary corporations. On the other hand, eases like Bryant v. Finnish Nat. Airline (15 N Y 2d 426, supra) are beside the point, because there, on very close and arguable facts, it was concluded that the foreign corporation itself engaged directly in localized activities sufficient to constitute doing business in this State (cf. Berner v. United Airlines, 3 N Y 2d 1003, affg. 3 A D 2d 9).
While it is said that the separateness of affiliated corporate entities is not being disregarded, ‘ ‘ valid inference ’ ’ is drawn from the fact of “ common ownership ” (really less than that) to find a breadth of localized activity not otherwise established by the record facts. Hence, the intercorporate relations are made a determining factor in this very case and generalized disavowals fail to obscure the reasoning process involved.
On this analysis, the present case extends the “ doing business ” rule well beyond the existing principles or precedents. And the effect on the flexibility and promotion of world-wide business enterprises would be drastic and unhealthy. Those who have sought to liberalize and broaden the bases for juris *544 diction have not considered any such drastic extension, although the occasion would be an obvious one (Uniform Interstate and Internationl Procedure Act, §§ 1.02-1.03 [9B U. L. A.], and Commrs.’ note to § 1.02; see, Ehrenzweig, Conflict of Laws [1962], pp. 114-118, esp. 115; for an interesting wide range of jurisdictional bases, not including the basis suggested in this case, see Castel, Private International Law [1960], pp. 243-250) Nor in private international law can there be found in this or other countries a jurisdictional reach as extensive as this. It is well established in this country that a foreign parent corporation will not be subjected to the judicial jurisdiction of a State merely because of its ownership of a subsidiary corporation doing business within the State, if the parent diligently maintains the formal separateness of the subsidiary entity (e.g., Cannon Mfg. Co. v. Cudahy Co., 267 U. S. 333, 337 [Brandris, J.]; Bolger v. Dial-A-Style Leasing Corp., 409 P. 2d 517 [Col.]; Botwinick v. Credit Exch., 419 Pa. 65, 73; Harris v. Deere & Co., 223 F. 2d 161, 162 [4th Cir.];.Steinway v. Majestic Amusement Co., 179 F. 2d 681, 683 [10th Cir.], cert. den. 339 U. S. 947; see Massey-Harris-Ferguson, Ltd. v. Boyd, 242 F. 2d 800, 803 [6th Cir.], cert. den. 355 U. S. 806; Restatement, 2d, Conflict of Laws, § 52, incl. Comment b and Reporter’s Note [Proposed Official Draft, Part I, May 2, 1967[2]]; Ann., Ownership or control by foreign corporation of stock of other cor *545 poraliou as constituting doing business within ¡State, 18 A. L. R. 2d 187, 189, 193-202; see, also, Laity, Subsidiaries and Affiliated Corporations [1936], pp. 60-64, recognizing the universality of the rule, but qualifying the rationale for it.) In the Bolger case (supra), the facts of which are particularly interesting, the Supreme Court of Colorado recently refused to extend jurisdiction over a New York parent corporation but held that its wholly owned subsidiary, the “ franchising and servicing ” company for the parent, had sufficient contacts in Colorado to be amenable to process there.
Similarly, courts in the United Kingdom evidently will not assert jurisdiction over a foreign corporation merely because it maintains a subsidiary in Britain (see The World Harmony [Konstantinidis v. World Tankers Corp.], [1965] 2 All E. R. 139, 147-149). Liberal Canadian jurisdictional statutes likewise do not recognize such a basis of jurisdiction (Ontario Rules of Practice, rule 25 [1] ; Quebec Code of Civ. Pro., art. 94). The same is probably true in Australia (see Cowen, AmcricanAustralian Private International Law [1957], p. 38).
In Civil Law and other code countries the recognized bases of personal jurisdiction over foreign corporations admits of the assertion of such jurisdiction only on the existence of a specially designated office, situs of headquarters, or what is described as “ domicile ” in a special sense (see Seidl-Hohenveldern, American-Austrian Private International Law [1963], p. 99; Garland, *546 American-Brazilian Private International Law [1959], pp. 85-86; Philip, American-Danish Private International Law [1957], p. 20; Delaume, American-French Private International Law [2d ed., 1961], pp. 142-143; Kollewijn, American-Dutch Private International Law [1955], pp. 59-60; Lombard, American- Venezuelan Private International Law [1965], pp. 71-72). In some countries it has been held that a foreign corporation is not subject to personal jurisdiction even if it maintains branches in the country, through which it actually does business (see Cappelletti & Perillo, Civil Procedure in Italy [1965], pp. 92-93; cf. Etcheberry 0., American-Chilean Private International Law [1960], pp. 29-30 [jurisdiction to tax]).
These are striking limitations in the code countries. They suggest very strongly that the extension of personal jurisdiction projected in this case would hardly be tolerated. The influence in the code countries of domiciliary jurisdiction (in the Anglo-American sense) is much too great, and the equivalent “ presence ’ ’ doctrine much more restrictive than here. There is not the slightest suggestion in these materials that a formally separate foreign corporation could be brought before a foreign forum because of some intercorporate relationship, however intimate, with a local corporation.
These limitations elsewhere, and in the past, bespeak caution for the future, and especially when one considers the salutary purposes served by permitting enterprises to limit and segregate their activities as they are extended into other and frequently less developed parts of the world. Of great significance, of course, is what was also mentioned earlier, that harmful extensions of doctrine in this area will easily lend themselves to reciprocal manipulation against American enterprises operating through subsidiaries or affiliates in other countries.
While the circumstances in this case are not as serious in their effect in permitting personal jurisdiction, because plaintiff is indeed a New York resident, and the Hilton enterprises looked at in the large as a layman would view them are so much 1 ‘ present ”, the rules applied will not stay so limited. Under such grossly extended rules nonresidents would also be able to sue in New York, where tort verdicts are regarded as very high; and there are other categories in which jurisdiction might be invoked under circumstances much less appealing than here. Again, it *547 is pointed out that this case does not involve a cause of action which arose here, but one that arose in another country across the seas.
Accordingly, I dissent and vote to reverse and grant the motion to dismiss the complaint against Hilton Hotels (U. K.) Limited.
Judges Bubice, Scileppi and Beegan concur with Chief Judge Fuld; Judge Breitel dissents and votes to reverse in an opinion in which Judges Van Voorhis and Keating concur.
Order affirmed, etc.

. This ground for decision is properly brought before us by the certified question since the courts below, in sustaining jurisdiction over the defendant, specifically relied on both our “long-arm” statute (CPLB 302, subd. [a], par. 1) —which, as indicated, is limited to a cause of action arising out of the transaction of business in New York—and the Taca Int. Airlines case (15 N Y 2d 97, supra) which concerned “ doing business” here in the traditional sense. (Cf. Singer v. Walker, 15 N Y 2d 443, 466—467.)

. “A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore.”

. “b. Subsidiary of corporation. Judicial jurisdiction over a subsidiary corporation does not of itself give a state judicial jurisdiction over the parent corporation. This is true even though the parent owns all of the subsidiary’s stock. Cannon Mfg. Co. V. Cudahy Packing Co., 267 U. S. 333 (1925). So a state does not have judicial jurisdiction over a parent corporation merely because a subsidiary of the parent does business within its territory.
“If the subsidiary corporation does an act, or causes effects, in the state at the direction of the parent corporation, the state has judicial jurisdiction over the parent to the same extent that it would have had such jurisdiction if the parent had itself done the act or caused the effects.
“ Judicial jurisdiction over a subsidiary corporation will likewise give the state judicial jurisdiction over the parent corporation if the parent so controls and dominates the subsidiary as in effect to disregard the latter’s independent corporate existence.
“Judicial jurisdiction over a parent corporation does not of itself give the state judicial jurisdiction over a subsidiary corporation. If the parent does an act, or causes effects, in the state at the direction of the subsidiary, the state has judicial jurisdiction over the subsidiary to the same extent that it *545 would have had such jurisdiction if the subsidiary had itself done the act or caused the effects. Likewise judicial jurisdiction over the parent corporation will give the state judicial jurisdiction over the subsidiary corporation if the parent so controls and dominates the subsidiary as in effect to disregard the latter’s independent corporate existence.
“Even in the absence of a stock relationship between a local and a foreign corporation, jurisdiction over the foreign corporation has sometimes been exercised on the basis of activities that the local corporation has conducted in the state as the agent of the foreign corporation. The existence of an agency relationship may be found when the foreign corporation consigns goods to the local corporation and exercises control over the latter with respect to price, merchandising or advertising.” (Comment 5.)
The Reporter’s Note, which is extended, after referring to the Taca- and Rdbinowitz cases (supra), comments: “In effect, the New York courts do not seem to distinguish between the situation where the foreign corporation maintains a branch in the State and where it maintains a subsidiary.” This, of course, would seem to go beyond the court’s intentions.