Sandra KOPOLOWITZ, Plaintiff,

v.

DEEPDENE HOTEL & TENNIS CLUB, Defendant.

No. 78 Civ. 2577 (KTD).

United States District Court, S. D. New York.

Jan. 30, 1979.

Nathan Cooper, New York City, of counsel, for plaintiff.

Whitman & Ransom, New York City, for defendant; John Condon Young, New York City, of counsel.

## OPINION and ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Sandra Kopolowitz brings this action against Deepdene Hotel and Tennis Club [hereinafter referred to as "Deepdene"] to recover for injuries sustained by her while she was a guest at that hotel in Bermuda. According to the complaint, Ms. Kopolowitz was physically and sexually assaulted by a non-guest intruder over the July fourth weekend in 1977. She charges Deepdene with carelessness and negligence in failing to provide adequate security measures for the protection of its guests.

Ms. Kopolowitz originally brought this action in New York State Supreme Court. It was removed here by Deepdene which now seeks an order of dismissal pursuant to Fed. R.Civ.P. 12(c) on the grounds that this Court lacks personal jurisdiction over it and that there was inadequate service of process. Deepdene moves in the alternative to dismiss the complaint on grounds of forum non conveniens.

Copies of the summons and complaint were served on plaintiff's employer, Robert Reid Associates, Inc. [hereinafter referred to as "Reid"] on May 9, 1978. Reid and Deepdene had a contract whereby Reid would provide representation services to Deepdene. Such services included the display of Deepdene's literature, handling of inquiries and requests for reservations for the hotel, promotion of the hotel with the public, travel agents, transportation lines and information bureaus, and the distribution of 50,000 pieces of Deepdene's Brochures and Tariff information. For its services, Reid received remuneration of $175 per month plus a commission of 3½% override on total room and meal business.

Deepdene stationery referred to Reid as its representatives for the United States, Canada and Great Britain. Deepdene was to keep Reid informed of any information that might affect the successful consummation of business and "to accept and properly protect any business booked by [Reid] in accordance with the Hotel's instructions." Contract between Robert Reid Associates, Inc. and Deepdene Hotel and Tennis Club, May 1975.

Norman Ahern, general manager of Deepdene gave deposition testimony in which he stated that Deepdene grossed approximately $500,000 per year. He also testified that he could not estimate the amount of business generated by Reid although he admitted it "was considerable to [Deepdene's] total volume." Deposition of Norman Ahern, November 3, 1978 at 35. W. Reid Wolfe, president of Reid, has submitted an affidavit in which he states that in the fiscal year ending August 26, 1977 Reid booked business for Deepdene approximating $418,607 which he believed represented about 90% of the hotel's business. ¶ 5, Affidavit of W. Reid Wolfe, December 13, 1978. This estimate on Wolfe's part is consistent with the testimony of Ahern regarding the approximate yearly gross of Deepdene and the fact that Reid's services generated a considerable portion of Deepdene's business. Wolfe further attested to a "Sell and Report" policy between Reid and Deepdene whereby Reid would confirm space without requesting it from the hotel. However, Reid maintained weekly consultations with the hotel to prevent overbookings and when rooms were limited requests for accommodations were made to the hotel for confirmation. Deepdene contends that its confirmation was always required, despite what risks Reid might have taken in confirming on its own authority. Deposition of Ahern at 31, 48.

Apparently, Deepdene's only other New York contact was a checking account with the Chase Manhattan Bank in New York City where an average monthly balance between $2,000 and $3,000 was maintained. This money was used to pay commissions to travel agents in the Metropolitan area as well as in Connecticut, Massachusetts, New Hampshire and other states. Reid, however, was paid out of another account the location of which was not brought out.

Deepdene contends that Reid's activities on its behalf in New York amounted to no more than mere solicitation and as such were insufficient to warrant a finding that Deepdene was doing business in New York and thus, subject to the jurisdiction of the New York Courts. *Miller v. Surf Properties,* 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958). In *Miller* a Florida hotel, the Belmar, retained the services of a travel representative, Broadway Resort Service, to promote business for it. Broadway placed a New York telephone listing in Belmar's name, distributed literature on Belmar's behalf and accepted reservations for Belmar, although no reservation was final until accepted by Belmar. Broadway also answered all queries regarding the hotel and kept a record of those who called which it submitted to Belmar. Broadway received $750 a year for these services plus an occasional bonus. All these services are strikingly similar to those which Reid provided for Deepdene.

Ms. Kopolowitz argues, however, that Reid's activities on Deepdene's behalf were more significant than the services provided in *Miller* since that agency succeeded in booking a substantial amount of Deepdene's business and was given considerable discretion in this regard. She urges that the facts of this case are more akin to those set forth in *Gelfand v. Tanner Motor Tours, Ltd.,* 385 F.2d 116 (2d Cir. 1967), *cert. denied,* 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1967) where the Court of Appeals for the Second Circuit, applying New York law, concluded that services of a booking agent go beyond mere solicitation where that agent performs services

> sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.

385 F.2d at 121 *citing Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967). That Court then found that because the foreign corporation relied upon the in-state agent for three sevenths of its business, generating $120,000 a year in bookings confirmed in New York, it was amenable to suit in New York. *See also Frummer v. Hilton,* the seminal New York case on "doing business" through a travel service. In *Frummer* Hilton (U.K.) was held to be "doing business" in New York by virtue of the services provided to it by Hilton Reservation Service, a non-profit company which generated business for Hilton (U.K.) and "could confirm availabilities immediately . . . and without charge" at any Hilton hotel including the London Hilton. 19 N.Y.2d 536, 537, 281 N.Y.S.2d 41, 44, 227 N.E.2d 851, 853 (1967).

According to Deepdene, the authority to confirm reservations, present in both the *Frummer* and *Gelfand* cases but not in the case at bar, is a critical factor which distinguishes those cases from the instant one. In fact, the pivotal consideration for finding jurisdiction in these travel service cases is whether the travel service does all the business which the foreign corporation could do here by its own officials. *Frummer, supra* at 537; 281 N.Y.S.2d at 44, 227 N.E.2d 851. *Gelfand, supra* at 121. If the foreign corporation holds back from its representative the power to confirm reservations it seems that the travel service is not doing all the business which the corporation could itself do.

There is no evidence in this case that Reid had the absolute power to confirm reservations; indeed, Reid's president testified that in spite of the "Sell and Report" policy,

Reid maintained weekly contact with Deepdene to prevent overbooking. Moreover, when rooms were limited, requests for accommodations were made to the hotel for confirmation. This is hardly unequivocal testimony that Reid had confirmation power. Nor do I believe that the small bank account maintained by Deepdene is sufficient to distinguish this case from *Miller v. Surf Properties, supra.* In short, Ms. Kopolowitz has failed to establish the contacts necessary for a finding that Deepdene was doing business in New York.

Accordingly, I am constrained to dismiss the action. In so doing, I need not reach Deepdene's alternative ground for dismissal. I do note, however, that the forum non conveniens issue raises some interesting questions. For although plaintiff is a New York resident, this action apparently has no other connection with New York. The incident took place in Bermuda and all the witnesses, save plaintiff are located there. Moreover, Deepdene is presently insolvent and its insurance coverage does not extend to foreign judgments. Despite all these factors in favor of transfer, it is unclear whether this case presents the extraordinary circumstances necessary for a change of venue, *see Alcoa Steamship v. M/V Nordic Regent,* —— F.2d ——, No. 78–7054 (2d Cir. January 10, 1979). However, since this case provides another reason for dismissal, these issues are better left to another day.

For the foregoing reasons, Deepdene's motion to dismiss is granted.

So ordered.