Regina L. **DARBY, as Administratrix C.T.a. of the Goods, Chattels and Credits of Peter Shelley Zeiler and Regina L. Darby, individually, Plaintiff,**

v.

**COMPAGNIE NATIONALE AIR FRANCE, d/b/a Air France, a corporation of France, Societe Des Hotels Meridien, d/b/a Meridien Hotels, Inc. and Sisal-Rio Hotels Turismo, S.A. d/b/a Meridien Copacabana, Defendants.**

No. 88 Civ. 7604 (RWS).

United States District Court, S.D. New York.

July 12, 1991.

John DeMaio, New York City, for plaintiff Regina L. Darby.

Bigham Englar Jones & Houston, New York City (John MacCrate, III, of counsel), for defendant Compagnie Nationale Air France.

Mound, Cotton & Wollan, New York City (Stuart Cotton, Diane P. Simon, of counsel), for defendant Sisal–Rio Hotels Turismo, S.A.

## OPINION

SWEET, District Judge.

Defendant Compagnie National Air France ("Air France") has moved pursuant to Rules 12(b)(6) and 56, Fed.R.Civ.P., for summary judgment dismissing the claims of Regina Darby ("Darby") in this wrongful death action. Defendant Sisal–Hotel Turismo, S.A. ("Sisal") has moved pursuant to Rule 12(b)(2), Fed.R.Civ.P., to dismiss the complaint for lack of *in personam* jurisdiction. For the reasons set forth below, both motions are granted.

*The Parties*

Darby is the spouse of decedent Peter Shelley Zeiler ("Zeiler") and the Administratrix of his estate.

Zeiler drowned off the coast of Mexico on December 31, 1986.

Air France is a French corporation whose stock is almost entirely owned by the Republic of France. Air France in turn owns 100% of the stock of Societe Des Hotels Meridien ("SHM"), also a French corporation. SHM is the owner of certain hotels outside of the United States and the corporate parent of Meridien Gestion S.A. ("SMG"). SMG, a French Corporation, is a wholly owned subsidiary of SHM.

SMG is the principal shareholder of Meridien Hotels, Inc. ("MHI"), a New York corporation with its principal offices in New York City.

Sisal is a Brazilian corporation with its sole place of business at Rua do Passeio 70, Rio de Janeiro, Brazil. Sisal is the owner of the Meridien Copacabana Hotel (the "Hotel"), located in Rio de Janeiro, Brazil.

*Prior Proceedings*

Darby filed this complaint on October 25, 1988. SHM subsequently filed a motion to dismiss for lack of *in personam* jurisdiction. In an opinion of April 13, 1990 (the "Opinion"), 735 F.Supp. 555, the court denied SHM's motion.

On May 25, 1990, Darby filed a motion for default judgment and for the intervention of a magistrate to oversee discovery. An opinion of September 21, 1990 denied Darby's motion, but granted Darby leave to amend the complaint to (1) reflect the MHI is an entity distinct from SHM and (2) name Sisal, instead of the non-jural entity "Meridien Copacabana" as a defendant if

Sisal was "fairly apprised" of the suit, 132 F.R.D. 354.

In an amended complaint of October 10, 1990, Darby named Sisal as a defendant. In the original complaint, Sisal was not named as a defendant. Instead the complaint named "Meridien Copacabana," a non-jural entity.

On January 7, and January 16, 1991, respectively, Sisal and Air France filed the instant motions. Oral argument was heard on April 4, 1991. The parties made additional submissions after oral argument.

*The Facts*

*Background*

This is a diversity action seeking damages for conscious pain and suffering and wrongful death arising out of the drowning of Zeiler in the surf at Rio de Janeiro, Brazil on or about December 31, 1986. Assuming the allegations as set forth in Darby's complaint for the purposes of this motion, Zeiler was a registered guest at the Hotel.

The complaint alleges that the Hotel is bordered by treacherous ocean waters and that the coastline is particularly dangerous after extended periods of rain. Darby maintains that the waters were so dangerous and the undertow so strong that the lifeguard, rather than enter the water, would summon helicopters whose pilots used a net to retrieve swimmers who were drowning. According to Darby, the conspicuous absence of warning signs, safety devices, and/or undertow monitoring devices resulted in the needless deaths of several individuals, prior to and including Zeiler.

In November of 1986, Zeiler and Darby, after seeing ads and brochures for the Hotel, made a reservation through a New York travel agent.

*The Management Contract Between Sisal and SHM*

Sisal is the owner of the Hotel. On January 30, 1976, Sisal entered into a contract with SHM (the "Agreement"), whereby SHM, through its Brazilian subsidiary, Meridien do Brasil Turismo, Ltda. ("MdB") agreed to manage and operate the Hotel. In December, 1986, SHM assigned its contract with Sisal to SMG. Meridien S.A. ("MSA") has subsequently assumed the contractual obligations of SMG. Air France, the corporate parent of SHM, is not involved in the daily operations of the Hotel.

Pursuant to Article XV of the Agreement, the Hotel was to be operated under the name "Meridien Copacabana" and the parties acknowledged that the name "Meridien" was the exclusive property of SHM.

Under the Agreement, Sisal was granted the right to participate in the computerized international reservations system available to hotels managed by SHM and its affiliates. Pursuant to Article IX, Section 2, SHM became obligated to provide reservation services for the benefit of the owner of the Hotel.

Section (2)(i) of Article IX of the Agreement states that:

> SHM will supply or take the necessary measures so that the affiliated companies supply, at the time of the hotel operation and for the benefit of its customers, this enumeration not being limitative, the following services and facilities:
>
> (i) reservations—The recourse by the hotel to the central reservation service SHM. The cost will be born [sic] by the hotel operation prorated on its usage.

The reservations system is known as "Meridien Reservations International." Reservations for rooms at hotels at international locations (other than the United States, Canada and the Bahamas) including the Hotel, were taken through a toll-free 800 number answered in New York City by employees of MHI. The part of the reservations system that is located in New York is operated by MHI for the direct benefit of owners of Meridien-managed hotels, including Sisal. By calling the toll-free number, the caller is connected with an MHI employee who, operating a computer terminal, can provide reservations information and take bookings at the Hotel.

MHI for the most part has the authority to confirm such reservations, except in the case of after 6:00 p.m. arrivals and at certain times during peak season. At most other times, the computer-generated information is up to date and the reservations agent can communicate a confirmation to the customer based on the information supplied by the Hotel that is contained on the computer terminal screen.

With respect to after 6:00 p.m. arrivals, the Hotel requires a guarantee before a reservation can be confirmed. In all such cases (except where an American Express card is used) confirmation occurs at the Hotel office. Once the Hotel checks the validity of the credit card or awaits clearance of a deposit check, the customer is notified by the Hotel of his confirmed reservation. Where the American Express card is used, confirmation is instantaneous, as American Express guarantees payment to the Hotel.

MHI's agreement with SHM provides that MHI, as the representative of SHM, "has no authority to enter into any final contracts with guests who desire space in any Hotels or agencies and ... all reservation commitments provided by MHI are subject to acceptance and confirmation by the individual Hotel involved ..."

Pursuant to the Agreement, in addition to the reservation procedures, all matters relating to the Hotel's advertising practices and general promotional activities are within the exclusive control of SHM.

Sisal has no offices, employees, agents, post office boxes or assets in New York or in the United States.

Sisal does not directly solicit business or advertise in New York or in the United States. Sisal does not carry out any activities in the State of New York or in the United States.

*Service of Process Upon Sisal*

On November 18, 1988, Darby served a copy of her summons and complaint naming the non-jural entity "Meridien Copacabana" upon the New York Secretary of State.

On November 21, 1988, Darby mailed a copy of the summons and complaint by international registered mail, return receipt requested, to the Hotel. There is no record of a receipt returned by Sisal.

On November 30, 1988 Darby's agent delivered a copy of the summons and complaint to a clerk at the Hotel's reception desk. The Hotel keeps a log book to record deliveries. The log book contains no record of the clerk's receipt of the summons and complaint. Darby's agent has filed out an affidavit of service containing a description of the clerk to whom the materials were delivered.

*Discussion*

I. In Personam Jurisdiction

The Opinion sets forth the various criteria a court considers in determining whether *in personam* jurisdiction exists. A federal court in a diversity action must look at the forum state's general jurisdictional or long arm jurisdictional statute to determine whether *in personam* jurisdiction exists over a nonresident defendant. Opinion at 559, citing *Savin v. Ranier*, 898 F.2d 304 (2d Cir.1990). If the relevant statute allows the court to exercise jurisdiction, then the court must make the further determination that "the exercise of jurisdiction comports with due process." *Id.* (citation omitted). In the present action, the forum state is New York, and Darby alleges that Sisal is subject to jurisdiction under § 301 of the New York Civil Practice Laws and Rules ("CPLR § 301" or "§ 301").[1]

1. The Opinion considered the question of whether Darby could assert jurisdiction over SHM under CPLR § 302(a), the "long-arm" statute providing jurisdiction over a foreign defendant who "transacts any business" within the state if the cause of action "arises from" the transaction of business. The Opinion held that jurisdiction under § 302(a) was inapplicable where Darby failed to establish, as a matter of

proximate causation, how the drowning at the Hotel "arose out of" the reservation system in New York. Opinion at 559, n. 1. *See Gelfand v. Tanner Motor Tours, Ltd.*, 339 F.2d 317 (2d Cir.1964) (applying proximate causation standard to action in which jurisdiction was asserted under § 302). Likewise with respect to Sisal, whatever the extent of its alleged negligence in the operation of the Hotel, the toll free reserva-

**1260**

■ In a motion to dismiss for lack of jurisdiction, the pleadings and affidavits are to be construed in the light most favorable to the plaintiff. Opinion at 559 (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). Moreover, where, as here, the court chooses not to have a full evidentiary hearing on the motion, Darby need only make a *prima facie* showing of jurisdiction through its affidavits and supporting materials. *Welinsky v. Resort of World, D.N.V.,* 839 F.2d 928, 930 (2d Cir.1988).

### A. CPLR 301 and "Doing Business in New York"

■ Sisal is a foreign corporation and thus may be subject to jurisdiction in this court if found to be "doing business" in New York pursuant to CPLR § 301. According to New York courts' interpretation of this section, a non-domiciliary may be subject to *in personam* jurisdiction in New York for any cause of action if the non-domiciliary is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of 'presence' in this jurisdiction." *Simonson v. International Bank,* 14 N.Y.2d 281, 285, 251 N.Y.S.2d 433, 435, 200 N.E.2d 427, 428 (1964).

■ The "doing business" requirement has been interpreted to mean "not occasionally or casually, but with a fair measure of permanence and continuity," (*Laufer v. Ostrow,* 55 N.Y.2d 305, 310, 449 N.Y.S.2d 456, 458, 434 N.E.2d 692, 694 (1982) (quoting *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915, 917)), so as to constitute more than "mere solicitation" of business. *Miller v. Surf Prop.,* 4 N.Y.2d 475, 480, 176 N.Y.S.2d 318, 320, 151 N.E.2d 874, 876 (1958). "[O]nce solicitation is found in any substantial degree courts have required very little more to support a conclusion of 'doing business.'" *H. Heller & Co., Inc. v. Novacor Chem. Ltd.,* 726 F.Supp. 49, 53

(S.D.N.Y.1988) (citations omitted), *aff'd,* 875 F.2d 856 (2d Cir.1989).

Sisal is not itself authorized to do business in New York; it has no employees, offices, assets, mailing address or telephone listing in New York. It does not directly advertise or solicit business in New York. There is no evidence, then, that Sisal itself does business in New York. Thus, if Sisal does any business in New York, it is through its agent SHM, which the Opinion held to be "doing business" in New York pursuant to § 301 through MHI.

### 1. Doing Business through an Agent in New York

The leading case on whether a foreign corporation may be found to be doing business in New York through its agent is *Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967). Under *Frummer,* the test for determining whether a foreign corporation can be deemed to be doing business in New York through its agent is whether the agent does all the business that the principal could do were it here by its own officials.

In *Frummer,* the court exercised jurisdiction over Hilton Hotels, Ltd. ("Hilton U.K."), a British corporation that operated the Hilton Hotel in London, the site of the accident that was the subject of plaintiff's personal injury case. Hilton U.K. was owned by Hilton Hotels International, a Delaware corporation doing business in New York, which was in turn owned by Hilton Hotels Corporation, also a Delaware corporation doing business in New York. Hilton Hotels International and Hilton Hotels Corporation jointly owned Hilton Credit Corporation, which provided credit card financing and distribution and a "Hilton Reservation Service" in New York and elsewhere. The New York office of Hilton Credit Corporation did publicity work and helped generate business for the London Hilton. In addition, the New York office accepted and confirmed room reservations at the London Hilton.

tion system was not the proximate cause of the alleged drowning. Therefore, for the same reasons as set forth in the Opinion, jurisdiction

under § 302(a) is similarly inapplicable to Darby's cause of action against Sisal.

The *Frummer* court concluded that Hilton U.K. was doing business in New York because the Hilton Credit Corporation was doing all the business that Hilton U.K. could have done had it been present in New York. *Frummer*, 281 N.Y.S.2d at 44, 227 N.E.2d at 853. The court distinguished the case from *Miller*, 4 N.Y.2d at 475, 176 N.Y.S.2d at 318, 151 N.E.2d at 874. In *Miller*, a Florida Hotel was found not to be doing business in New York because, among other things, its reservations were subject to confirmation in Florida.

In applying *Frummer*, the Second Circuit has gone a step further in *Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116 (2d Cir.1967), *cert. denied*, 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968). Judge Lumbard's opinion for the court read *Frummer*'s "all-the-business-the-foreign-corporation could do" test to mean that "a foreign corporation is doing business in New York ... when its New York representative provides services beyond 'mere solicitation' and these services are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Id.* at 121.

The *Gelfand* court held that an independent local travel agent who had the power to confirm reservations performed sufficient agency functions for the defendant bus line to satisfy the "doing business" test under New York law.

Indeed, an agent's power to confirm reservations has been a pivotal factor in many cases applying § 301. *Welinsky*, 839 F.2d at 928 (reversing judgment of the district court dismissing the case for lack of personal jurisdiction over the defendant, a Netherland Antilles Hotel, where New York agent had the ability to confirm reservations instantaneously); *Kopolowitz v. Deepdene Hotel & Tennis Club*, 464 F.Supp. 677 (S.D.N.Y.1979) (dismissing for lack of jurisdiction) ("If the foreign corporation holds back from its representative the power to confirm reservations it seems that the travel service is not doing all the business which the corporation could itself do.")

The court has already examined the arrangements concerning Sisal's confirmation policy in the Opinion. The Opinion found that:

> MHI is able to confirm almost all reservations upon receiving the caller's request because the Hotel has already indicated via computer room availability. The exceptions to this confirmation policy are extremely limited in that MHI cannot confirm after 6 p.m. late arrivals and only if those are paid for by a company other than American Express.

Opinion at 562. These findings therefore require the conclusion that through the Agreement with SHM, which does business in New York for the purposes of § 301, Sisal too does business in New York.

This conclusion is, moreover, consistent with the result in *I. Oliver Engebretson, Inc. v. Aruba Palm Beach Hotel & Casino*, 587 F.Supp. 844 (S.D.N.Y.1984), a case interpreting *Frummer* with facts similar to those in the instant case. In *Aruba*, the foreign corporation had a contractual arrangement with an independent local travel agent who had the power to make and confirm reservations for the foreign hotel owned by the foreign corporation. The foreign corporation did not have nor ever maintained any offices or employees in New York, any real property or assets in New York, nor a New York telephone number. The court in *Aruba* found *in personam* jurisdiction on the grounds that the presence of any agent in New York with the undisputed authority to bind the foreign principal by confirming reservations was sufficient to warrant a finding that the defendants were "doing business" in New York. *Id.* at 850. Common ownership was not required between the foreign corporation and the New York agent. *See id.*

Sisal cites *Tripmasters, Inc. v. Hyatt Intern. Corp.*, 696 F.Supp. 925, 933 (S.D.N.Y.1988) in support of its position that a court will not exercise its jurisdiction over a foreign corporation where the only presence of the hotel in New York was a reservation system operated pursuant to an

agency agreement by a management corporation with whom the hotel had no ownership connections.

With regard to the agent's confirmation authority, however, the reservation system in *Tripmasters* gave the reservation agents far less authority than MHI has in the instant case. The reservation service in *Tripmasters* consisted of two 800 numbers. One number, staffed by a New York office, took information on group sales. The New York office communicated information about customer requests to a Chicago office, which responded with information about room availability which it in turn had received from the defendant hotel. The New York office referred group customers who wished to take further steps to secure a reservation directly to the hotel. The New York Office neither accepted nor confirmed reservations on behalf of the hotel. Individuals interested in making reservation could use the other 800 number, which connected to an office in Omaha, Nebraska. That office could tentatively accept reservations, which were subject to the hotel's direct confirmation by telex.

Thus, although the reservations service in *Tripmasters*, like the service in the instant case, operated pursuant to contract with an entity that had no corporate relation with the defendant hotel, the New York based reservations office in *Tripmasters* confined itself to providing only information, and therefore the New York agent was not doing all the business that the defendant foreign corporation could do were it here with its own official. In contrast, because it can in most cases confirm reservations, MHI performs all the functions Sisal would perform were it in New York by its own officials.

Sisal also cites *Kopolowitz, supra,* in support of its position. In *Kopolowitz,* the court considered the relationship between defendant hotel, a Bermuda corporation, and its New York agent for the purposes of the doing business test. The court held that it did not have jurisdiction over the defendant. As the court based its holding on its finding that there was no evidence that the agent had the absolute power to confirm reservations.

### B. *Due Process Considerations: Minimum Contacts*

The conclusion that Sisal is subject to statutory jurisdiction under § 301 does not end the inquiry, but requires a further determination: whether the court's exercise of jurisdiction comports with due process standards. Opinion at 22. Due process requires that a district court seeking to exercise personal jurisdiction over a nonresident defendant must conclude that the nonresident defendant has purposefully established "minimum contact" with the forum state such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)).[2]

The Supreme Court in determining the existence of minimum contacts under the Due Process Clause has considered the following factors, among others: (1) whether the defendant "purposely availed" himself of the benefits of the forum state; (2) whether the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there; (3) whether the defendant carries on a "continuous and systematic" part of its general business within the fo-

---

**2.** The minimum contacts of a nonresident defendant with the forum state may support a finding of either "specific" or "general" jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 1872 & n. 8, 80 L.Ed.2d 404 (1984). A court exercises personal jurisdiction under the doctrine of "specific jurisdiction" when the controversy "arises from or relates to" the defendant's contacts with the forum state. *Id.* When the defendant's contacts with the forum state are unrelated to the controversy, a court may still be able to exercise personal jurisdiction over the defendant based on its "general jurisdiction" powers, but the threshold for a showing of "minimum contacts" for due process purposes is higher. *Id.; Donatelli v. Nat'l Hockey League,* 893 F.2d 459, 463 (1st Cir.1990) (citation omitted).

rum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473–4, 105 S.Ct. 2174, 2182–3, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 438, 72 S.Ct. 413, 414, 96 L.Ed. 485 (1952).

In this case, Darby has made out a *prima facie* case for jurisdiction over Sisal where the allegations establish that Sisal by hiring an agent to operate a toll-free reservations system to solicit business for the Hotel, purposefully availed itself of the benefits of the forum state, and that this relationship with the forum state was a long term relationship governed by Sisal's contract with SHM. *See* Opinion at 564–65 (SHM's involvement in alleged incident supports finding of jurisdiction); *Aruba, supra,* 587 F.Supp. at 851 (foreign corporation's systematic course of dealing in forum states through local agents satisfies due process). *See also Terry Mariner v. Hyatt Corp.,* 90 Civ. 464, 1990 WL 192482, 1990 U.S. Dist. LEXIS 16570 (D.Haw.1990) (acts of defendant, including advertising and operation of world-wide toll-free reservation system, constituted "purposeful availment" sufficient to support finding of specific jurisdiction for due process purposes).

Sisal cites *Donatelli v. Nat'l Hockey League,* 893 F.2d 459 (1st Cir.1990) for the proposition that the foreign corporation must control or substantially influence the contacts occurring in the forum state in order to support a court's exercise of jurisdiction consistent with due process requirements. The *Donatelli* court, however, was considering the doctrine of minimum contacts as it applied to the attribution of the contacts of a member team to the defendant, an unincorporated association comprised of member teams. The court considered the law relating to attribution based on the analogous relations between a parent and its subsidiary and a partnership and its partners. The court did not consider the attribution of the contacts with the forum state of an agent to its principal, and therefore *Donatelli*'s requirements of control and influence are inapplicable to the instant case.

In addition to finding minimum contacts, it is necessary for the court to determine whether it is fair to subject Sisal to suit in New York. Opinion at 565. The burden in this showing is on the defendant seeking to defeat jurisdiction. *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184. Pursuant to the factors set for in *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the exercise of personal jurisdiction over Sisal would be constitutionally permissible where Sisal has made no showing that submitting to this court's jurisdiction would be burdensome, where the New York plaintiff has an interest in obtaining relief, and where the forum state has an interest in redressing any tortious activities that are in some way ascribed to Sisal.

### C. *Service on Sisal*

Once the predicate for general jurisdiction for a foreign corporation not authorized to do business in New York has been established, Business Corporation Law § 307 (McKinney's 1991) ("BCL § 307" or "§ 307") prescribes the method for effecting service of process. *Flick v. Stewart–Warner Corp.,* 76 N.Y.2d 50, 55, 556 N.Y.S.2d 510, 512, 555 N.E.2d 907, 909 (Ct.App.1990).

Section 307 provides that service may be commenced on an unauthorized foreign corporation by serving the process "upon the secretary of state as its agent." BCL § 307(a). Such process must be served personally at the office of the Secretary of State in Albany or on the deputy or on an authorized agent for service. BCL § 307(b). Thereafter, notice of the service and a copy of the process must either be delivered "personally without this state to such foreign corporation" in accordance with § 307(b)(1) or sent "by or on behalf of the plaintiff to such foreign corporation by registered mail with return receipt requested" in accordance with § 307(b)(2).

Regardless of whether such service is effected personally or by registered mail,

an affidavit of compliance must be filed in accordance with § 307(c)(1) or § 307(c)(2) with the clerk of the court in which the action is pending within 30 days after such service. "In either case, service of process is not complete until 'ten days after [the affidavit of compliance containing proof of service is] filed with the clerk of the court.'" *Id.* (quoting §§ 307(c)(1) and (2)). Moreover, strict compliance with the procedures of BCL § 307 is required to effect service upon an unauthorized foreign corporation. *Id.*, at 57, 513. Compliance with § 307 is a jurisdictional requirement, *id.* at 56, 512, and has been held to be so by federal courts sitting in diversity and applying § 307. *Albee Specialists v. Paragon Sportwear, Inc.*, No. 90 Civ. 2811 (S.D.N.Y. October 10, 1990) (1990 WL 155593).

In the instant case, there is no dispute that Darby served the secretary of state. Sisal, however, disputes that it received both the registered mail service and the personal service. There is no dispute that the affidavits of compliance were not filed with the clerk of the court.

Construing for the purposes of this motion all pleadings and affidavits the light most favorable to Darby, and resolving all doubts about the registered mail and personal service in Darby's favor, Darby has nonetheless failed to serve Sisal where she did not file an affidavit of compliance. Therefore, while the jurisdictional requirements of CPLR § 301 have been met, Darby has failed to meet the additional jurisdictional requirements of BCL § 307, rendering the court's exercise of jurisdiction improper.

Moreover, any attempt now to make Sisal a party to this proceeding would be time barred. Under New York law, an action is commenced when a defendant is properly served with process. CPLR § 203(b). *See also Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64

L.Ed.2d 659 (1980) (state law governs when an action is commenced for limitations purposes in a diversity action in federal court). Here, Sisal, an unauthorized corporation, was not properly served where Darby failed to fulfill the filing governing the service of process on such corporations pursuant to BCL § 307. Furthermore, mere service of the secretary of state, pursuant to § 307, without the fulfillment of the rest of § 307's requirements, does not toll the running of the statute of limitations.[3] *Singer v. Black & Decker Mfg. Co.*, 668 F.Supp. 160 (W.D.N.Y.1987).

The cases cited by Darby for the proposition that the requirements of BCL § 307 need not be strictly complied with are distinguishable. In *Orzechowski v. Warner–Lambert Co.*, 457 N.Y.S.2d 323, 91 A.D.2d 681 (2d Dept.1982), plaintiff failed to include proper notice to the party that the secretary of state had also been served. In *Piekarz v. Columbia Laundry Machine Co.*, 541 N.Y.S.2d 439, 150 A.D.2d 539 (2d Dept.1989), the plaintiff mistakenly served defendant by certified mail. Moreover, these cases predated the Court of Appeals' decision in *Flick*.

Where Darby has failed to comply with the filing requirements of BCL § 307, the court cannot exercise personal jurisdiction over Sisal. Moreover, any attempt to comply with these requirements would now be time-barred. Therefore, Sisal's motion to dismiss for lack of personal jurisdiction is granted.

## II. Air France's Motions

Air France has moved pursuant to Rule 12(b)(6), Fed.R.Civ.P., to dismiss the action as against itself for lack of subject matter jurisdiction, or, in the alternative for summary judgment dismissing the complaint pursuant to Rule 56, Fed.R.Civ.P.

### A. *Subject Matter Jurisdiction*

The Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*, (the "Act") pro-

---

**3.** The statutes of limitations applicable to the instant case are the three-year statute of limitations governing negligence and loss of consortium claims pursuant to CPLR § 214, and the two-year statute of limitations for wrongful

death claims under Estates, Powers and Trusts Law § 5–4.1. Therefore, the final day for commencing an action under § 214 was December 31, 1989, and under § 5–4.1, December 31, 1988.

vides for the immunity of a foreign state, agency or instrumentality from the jurisdiction of the courts of the United States based on the doctrine of sovereign immunity.[4] *Martin v. Republic of South Africa*, 836 F.2d 91 (2d Cir.1987).

The Act, provides for several exceptions to its general conferral of immunity on foreign states and their agents. Section 1605(a)(2) provides that a foreign state shall not be immune from the jurisdiction of the United States in any case:

> (2) in which the action is based upon a commercial activity carried on or in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that caused a direct effect in the United States.

The term "foreign instrumentality" is defined in § 1603(b) as an entity which is "(1) a separate legal person, corporate or otherwise; (2) ... a majority of whose shares ... is owned by a foreign state or a political subdivision thereof; and (3) is neither a citizen of a state of the United States ... nor created under the laws of any third country ...". As a company the majority of whose shares are owned by the Government of France, Air France qualifies as an instrumentality of a foreign sovereign. *See O'Connell Machinery Co., Inc. v. M.V. "Americana"*, 734 F.2d 115 (2d Cir.), *cert. denied*, 469 U.S. 1086, 105 S.Ct. 591, 83 L.Ed.2d 701 (1984) (Italian shipping line, majority of whose shares owned by entity under direct control of public financial entity which coordinated management of commercial enterprises of Italian government qualifies as instrumentality of Republic of Italy). Therefore, as a foreign instrumentality Air France is immune from the jurisdiction of this court if none of the above exceptions applies.

With regard to the first exception, which provides for jurisdiction of an action which is "based upon a commercial activity carried on or in the United States by the foreign state," courts have required a nexus between the commercial activity in the United States and the cause of action. *Barkanic v. CAAC*, 822 F.2d 11 (2d Cir. 1987). This requirement that the action be "based upon" commercial activity of the foreign state is not the equivalent of the "doing business" requirements of long-arm statutes, but is less broad. *Harris v. VAO Intourist, Moscow*, 481 F.Supp. 1056, 1061 (E.D.N.Y.1979). Where, as here, the cause of action is based on the drowning of Zeiler in Brazil, there is no nexus between that incident and the commercial activities that Air France carries out in the United States. *Castillo v. Shipping Corp. of India*, 606 F.Supp. 497, 501 (S.D.N.Y.1985) (personal injury action arising out of injuries sustained aboard vessel of defendant shipping corporation wholly owned by the government of India not "based upon" defendant's commercial activities in United States); *Harris*, 481 F.Supp. at 1061 (personal injury action arising out of injuries sustained from fire in Moscow hotel operated by defendant state owned tourist agency not "based upon" defendant's commercial activities in United States for purposes of § 1605(a)(2)).

The second exception to sovereign immunity under § 1605(a)(2) applies when the action is based upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere. This exception is inapplicable where the act upon which the action is based—the alleged negligent operation of the Hotel—was performed outside of the United States.

Section 1605(a)(2) provides a third exception to sovereign immunity when the act and the commercial activity both occur outside of the United States, but cause a "direct effect" in the United States. Personal injuries outside the United States do not have a direct effect on the United States.

---

**4.** Federal District courts have original jurisdiction in any civil action against a foreign state. 28 U.S.C. § 1330 (1982).

*Martin,* 836 F.2d at 91 (negligent act in Republic of South Africa causing personal injuries to a citizen of the United States did not have a direct effect in the United States); *Close v. American Airlines, Inc.,* 587 F.Supp. 1062 (S.D.N.Y.1984) (no jurisdiction where accident causing personal injuries had no direct effect on the United States).

The instant case, then, falls within none of the exceptions of the Act. The action must therefore be dismissed as against Air France for lack of subject matter jurisdiction. Accordingly, the court need not consider the summary judgment motion.

*Conclusion*

For the reasons set forth above, Sisal's motion dismissing the complaint against itself for lack of subject matter jurisdiction is granted, as is Air France's motion dismissing the complaint as against itself for lack of subject matter jurisdiction.

It is so ordered.