**Roy SANDERS, Plaintiff,**

v.

**WILTEMP CORPORATION, d/b/a Brookdale-On-The-Lake, Defendant.**

No. 78 Civ. 500 (CHT).

United States District Court, S. D. New York.

Jan. 19, 1979.

Martin, Van De Walle & Sawyer, Great Neck, N. Y. (Charles R. Van De Walle, Nicholas J. Donohue, Great Neck, N. Y., of counsel), for plaintiff.

Spector, Cohen, Hunt & Rosen, P.C., Philadelphia, Pa. (Edward M. Dunham, Jr.,

Philadelphia, Pa., of counsel), Anderson, Russell, Kill & Olick, P.C., New York City (Irene C. Warshauer, New York City, of counsel), for defendant.

## OPINION

TENNEY, District Judge.

The plaintiff has brought an action to recover for personal injuries allegedly sustained while he was vacationing at a Pennsylvania resort. The defendant, Wiltemp Corporation, is a citizen of Pennsylvania and owner of the resort styled "Brookdale-On-The-Lake." For convenience, the Court will refer to the defendant as "Brookdale." Brookdale has now moved for dismissal of the complaint, alleging lack of in personam jurisdiction. Fed.R.Civ.P. 12(b)(2). The plaintiff has cross-moved for an order of attachment to establish jurisdiction quasi-in-rem in the event that no in personam jurisdiction is found. For the following reasons, both motions are granted.

### Jurisdictional Facts

It is undisputed that the defendant corporation is not qualified to do business in New York, and that it does not now—nor did it at the time of the alleged accident—maintain employees, an office, or a telephone number in New York. It does not own real property here, nor does it execute contracts for room reservations here. It does attract a number of guests from New York, largely via advertisements in New York newspapers. For a period of approximately six months during the year preceding the accident, it had a contract with a New York travel agent, Alexander Associates ("Alexander"), to place these ads. Alexander also accepted reservations and deposits for the resort, and forwarded the latter to Brookdale in groups, using its own checks. The relationship with Alexander terminated on November 13, 1977; the mishap occurred on December 31, 1977. The plaintiff did not use Alexander to book his vacation at

Brookdale; he made his reservation by phone to Pennsylvania. However, he maintains that he chose Brookdale in response to the New York newspaper publicity, although it is unclear who placed the particular ad or ads which precipitated the visit; since September 1977 the defendant has also used a Pennsylvania advertising agency to perform this service.[1]

The defendant also generates tourist interest in New York through its relationship with the Pocono Mountain Vacation Bureau (also of Pennsylvania), a promotional organization which mentions Brookdale in its literature, and through promotional material circulated by the Automobile Association of America. Other contacts with the state are alleged in the defendant's use of independent travel agents in New York to accept guest reservations for Brookdale, and in Brookdale's use of a New York printer to produce its own advertising brochure, which is regularly mailed to New York recipients. The production of this brochure is overseen by Brookdale's president in visits to the New York printer about twice a year.

### Discussion

In a diversity action, the Court must determine its jurisdiction by reference to the law of the forum state. *Arrowsmith v. United Press Int'l*, 385 F.2d 116 (2d Cir. 1963). The plaintiff claims that the defendant is amenable to suit in New York under both the "long-arm" statute, N.Y.C.P.L.R. § 302, and by traditional notions of "doing business" in the state, N.Y.C.P.L.R. § 301. Neither claim is supportable. The long-arm argument can be disposed of summarily, since the claim sued upon simply does not fit within the language of the statute. Section 302(a) states in pertinent part that

[a]s to a cause of action *arising from* any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary . . . who in person or through an agent:

1. It is probable that the plaintiff saw at least one ad that did not originate with Alexander, since he states that the Alexander-placed ads contained only Alexander's telephone number,

but acknowledges that he called Brookdale direct. The evidence is that Brookdale's own number was used in the ads placed through the Pennsylvania advertising agency.

1. transacts any business within the state; or

 .  .  .  .  . .

3. commits a tortious act without the state causing injury to person or property within the state . . . .

(Emphasis added.)

Subsection (a)(1) certainly cannot provide a jurisdictional predicate on these facts, for the injury did not spring from a business transaction in New York. The plaintiff called Pennsylvania from New York, spurred by an advertisement in a New York newspaper. Assuming arguendo that this was a commercial transaction with a relationship to this state, it lacks any causal relationship to the alleged breach of duty that occurred on Brookdale's property. On facts such as these the New York Court of Appeals has held section 302(a)(1) inapplicable, stating that the out-of-state tort arises only incidentally from the in-state transaction of business. See *Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y.2d 533, 281 N.Y. S.2d 41, 227 N.E.2d 851, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967); J. McLaughlin, Practice Commentary C302:2, at 63–65, N.Y.C.P.L.R. § 302 (7B McKinney 1972).

Subsection (a)(3) is also of no use to plaintiff, for it is settled law that to suffer in New York the residual effects of injury sustained elsewhere is not synonymous with sufferance of injury "within the state" in the contemplation of section 302(a)(3). That subsection

"looks to the imparting of the original injury within the State of New York and not resultant damage . . . . To hold otherwise would open a veritable Pandora's box of litigation subjecting every conceivable prospective defendant involved in an accident with a New York domiciliary to defend actions brought against them in the State of New York."

*Kramer v. Hotel Los Monteros S.A.,* 57 A.D.2d 756, 394 N.Y.S.2d 415, 416 (1st Dep't 1977), *quoting Black v. Oberle Rentals,* 55 Misc.2d 398, 400, 285 N.Y.S.2d 226, 229 (Sup. Ct.1967); *see American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428, 434 (2d Cir. 1971) (*Black v. Oberle* language, *supra,* quoted with approval).

■ Likewise, the plaintiff's section 301 argument is equally unavailing, for Brookdale's activities in New York fall far short of doing business in this state "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 268, 115 N.E. 915, 917 (1917). Each case to be assessed against this standard turns on its own facts, *Chaplin v. Selznick,* 293 N.Y. 529, 58 N.E.2d 719 (1944), and in cases similar to those at bar the New York Court of Appeals has determined that a foreign hotelier is "present" in this state for purposes of section 301 jurisdiction where a local reservation service acting as the agent of the foreigner "does all the business which [the foreign corporation] could do were it here by its own officials." *Frummer, supra,* 19 N.Y.2d at 537, 281 N.Y.S.2d at 44, 227 N.E.2d at 854. As a general rule "mere solicitation" of business within the state by the agent is not enough, *Miller v. Surf Properties, Inc.,* 4 N.Y.2d 475, 176 N.Y.S.2d 318 (1958); however, "once solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business.'" *Aquascutum of London, Inc. v. S. S. American Champion,* 426 F.2d 205, 211 (2d Cir. 1970). How much more is "very little more" is a question of fact.

■ *Frummer* and *Miller* represent the two poles between which jurisdiction has or has not been found in the context of hotel reservation solicitation cases. In *Frummer* the New York corporation performed a variety of promotional services for its foreign sister corporation, and, too, the fact of their corporate relationship gave rise "to a valid inference as to the broad scope of the agency" which existed. *Id.,* 19 N.Y.2d at 538, 281 N.Y.S.2d at 45, 227 N.E.2d at 854. High on the list of significant powers which the New York agent held was the ability to confirm reservations at the out-of-town hotel. These facts distinguished *Frummer* from the earlier *Miller* case, where jurisdiction was rejected. In *Miller,* the New York

activities of the out-of-town hotel were carried on by an independent travel agent associated with the foreign hotelier only by contract. Significantly, the in-town agent could not absolutely confirm space at the hotel. Although the foreign corporation had a New York telephone number which rang at the offices of the New York agent, and the New York agent sent out literature supplied by the hotel, answered questions about it and accepted reservation deposits, the New York Court of Appeals found that these activities amounted to nothing more than "mere solicitation" of business by the foreign corporation.

When the Court compares the facts at bar to those in *Frummer* and in *Miller*, it is clear that they are more suggestive of the latter situation. First, there is no question but that the defendant and Alexander were in no way related other than by contract for the very short period of their business association. Thus there is no valid inference of broad agency to be raised from a more intimate corporate relationship as there was in *Frummer*. Second, Alexander had no power to bind Brookdale by confirmation of reservations to New Yorkers dealing with the New York representative. During a deposition the defendant's president was asked by plaintiff's counsel: "Were those reservations final when accepted by Alexander Associates, or were they subject to approval by Brookdale?" He responded: "They're subject to availability of rooms and subject to our receipt of a deposit." Examination Before Trial of Elliot Wilkins at 13, lines 5–9, annexed as Exhibit C to Affidavit of Charles R. Van De Walle, sworn to July 21, 1978. The plaintiff has not disputed the assertion that Alexander had no power to confirm reservations at Brookdale.

This circuit has had occasion to review the distinctions between *Miller* and *Frummer*, and to comment on the holding of the latter case. It found under *Frummer* that New York courts will hold that

a foreign corporation is doing business in New York "in the traditional sense" when its New York representative pro-

vides services beyond "mere solicitation" and those services are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.

*Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116, 121 (2d Cir. 1967). In *Gelfand* the defendants operated a Grand Canyon bus tour which was reserved and confirmed through a New York representative unaffiliated with the operators. The court found it "clear from the record that unless defendants had arrived at this working arrangement with [the local agent] or a similar arrangement with some other New York representative, they would either have had to open their own reservation office in New York or give up the Grand Canyon tour." *Id.* By contrast, it is clear from this very plaintiff's experience that Brookdale did not require the services of Alexander or of any other in-state representative to consummate its tourist business with New Yorkers. Upon seeing an advertisement in a New York paper, anyone could call the hotel out-of-state, request a room, send in a deposit, receive confirmation and travel to and from the hotel, all without the hotel reaching into the state in any way other than through solicitation. Nothing between Brookdale and Alexander indicates that, during their brief relationship, the hotel did business with New Yorkers in any significantly different manner.

Finally, the added service performed by Alexander for Brookdale in New York, *e. g.*, the placing of newspaper ads, and the fact that Alexander transmitted deposits to Brookdale in cumulative form on its own checks rather than in the same form as received (as was the case in *Miller*), simply do not amount to presence in New York with any measure of permanence and continuity, much less a "fair measure," *Tauza, supra*, and neither do the printing of brochures in New York or the occasional business-related visits of the defendant's president add much to the slender showing by the plaintiff. Therefore, the Court finds that it lacks in personam jurisdiction over the defendant.

Anticipating the possibility that in personam jurisdiction would be rejected by this Court, the plaintiff has cross-moved for an order of attachment against the contractual obligation of the New Hampshire Insurance Company ("the insurer") to defend and indemnify the defendant in order to obtain quasi-in-rem jurisdiction in this matter. *See Seider v. Roth*, 17 N.Y.2d 111, 269 N.Y. S.2d 99, 216 N.E.2d 312 (1966). The defendant opposes the attachment, asserting that it received a letter from the insurer "expressly disclaim[ing] coverage citing as the basis therefore [sic] a snow mobile exclusion clause." Affidavit of Edward M. Dunham, Jr., sworn to August 1, 1978, ¶ 7. The same affiant, who is defendant's attorney, states that the insurer has reiterated the disclaimer by telephone, but acknowledges that the question of coverage is not "definitively settled." *Id.* ¶ 12.

Based on these scant representations, the defendant claims that no "debt" is currently due in New York and that, a fortiori, no attachment can properly issue. The Court does not agree that an alleged dispute between the defendant and the insurer about the construction of the insurance policy is of any jurisdictional significance at this stage of the proceedings. While the plaintiff always carries the burden of proof to demonstrate jurisdiction, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), he need only make out a prima facie case at the start of the action. *United States v. Montreal Trust Co.*, 358 F.2d 239 (2d Cir.), *cert. denied*, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966). It is undisputed that the policy exists, that the insurer does business in New York, and that the plaintiff is a resident of this state. There being no constitutional question about the use of attachment by a New York resident to proceed quasi-in-rem in a personal injury suit against an out-of-state insured, *see O'Connor v. Lee-Hy Paving Corp.*, 579 F.2d 194 (2d Cir. 1978), a prima facie jurisdictional case has been made out. If it is eventually shown that the insurer is not liable in this particular instance, then jurisdiction will fail. Meanwhile, the attachment may issue and abide the event.

For all of the foregoing reasons, the defendant's motion to dismiss the complaint for lack of in personam jurisdiction is granted; likewise, the plaintiff's cross-motion for an order of attachment is granted. Plaintiff will proceed pursuant to N.Y.C.P. L.R. § 6201 *et seq.* to establish the jurisdictional base. *See* Rules 64 and 4(e) Fed.R. Civ.P.

So ordered.