# PLASTISTARCH INTERNATIONAL CORPORATION, Plaintiff,

v.

# PLASTISTARCH CORPORATION LIMITED, and Cellcor Corporation of Canada, Limited, Defendants.

## No. 79 CIV. 5055(MP).

United States District Court,
S. D. New York.

Feb. 26, 1980.

---

Hopgood, Calimafde, Kalil, Blaustein & Lieberman, New York City by William L. Botjer, New York City, for plaintiff.

Windels, Marx, Davies & Ives, New York City by J. Daniel Mahoney, New York City, for defendants.

## MEMORANDUM

MILTON POLLACK, District Judge.

Defendants seek an order dismissing the Amended Complaint under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, 12(b)(2) for lack of personal jurisdiction, 12(b)(3) for improper venue, 12(b)(7) for failure to join an indispensable party under Rule 19, and 17 for failure to prosecute the action in the name of the real party in interest. The parties have submitted their respective statements of fact in accordance with Local Rule 9(g). Since matters outside the pleadings have been considered by the Court—affidavits, exhibits, statement and the response thereto under Local Rule 9(g)—the motion will be considered as one for summary judgment under Fed.R.Civ.P. 56. For the reasons set out below, the motions to dismiss the amended complaint for lack of personal jurisdiction and for improper venue will be granted.

This action is based on diversity of citizenship. The amended complaint seeks a declaratory judgment (i), that a certain July 1973 agreement between defendants and a corporation not a party to this suit was a valid agreement; (ii), decreeing the scope of technology to be transferred under said agreement; (iii), ordering the defendants to perform the said agreement, including the assignment to plaintiff of the rights to use the technology referred to; and (iv), decreeing damages in favor of plaintiff.

Plaintiff, Plastistarch International Corporation (referred to in the papers as PLSI, but for clarity also referred to herein as "Delaware") is a company organized under the laws of the State of Delaware and according to the amended complaint, with offices in New York City. Defendants Plastistarch Corporation Limited (referred

to in the papers as PLS) and Cellcor Corporation of Canada, Limited, are corporations organized under the laws of Canada with their *principal* offices in St. Laurent, and Montreal, Quebec, Canada, respectively. (For convenience the defendants will be singly or collectively referred to as "Canadian" hereafter.) Neither defendant transacts business in New York, nor are they authorized to do so and neither has an office in New York.

Although the dispositive legal issues in this case are relatively straightforward, the underlying facts are somewhat labyrinthine. In 1973, a Mr. John F. Hughes, a Canadian, was experimenting with the manufacture of starch based materials to be used as substitutes for certain products containing petroleum derivatives. Along with others, he organized the defendant corporations (Canadian) to develop, produce, and market the products.

According to Hughes' uncontradicted affidavit, in the later part of June 1973, he was invited by Mr. Roger Shashoua, then-president of a corporation with principal offices in New York, viz., Patents International Overseas Corporation (PIO in the papers), to attend a meeting of the managers of that corporation and its parent corporation, Patents International Affiliates Ltd. (PIA in the papers). The meeting was held on or about July 2, 1973, in New York City. There is no indication in the record that Hughes had done anything to initiate the invitation or meeting in New York. Hughes affirms, again without contradiction, that the purpose of the meeting was for him to meet PIO and PIA personnel and to become familiar with their worldwide marketing capabilities for new products.

At the meeting, which lasted approximately two hours, there was a discussion of PIO's marketing potential and of the economic potential of Hughes' products for which patent applications had been filed. Mr. Shashoua broached the suggestion that Canadian enter into a contract with PIO for the worldwide marketing of the patented products. Hughes responded that the only marketing rights that would be considered would have to be exclusive of the United States and Canada. At the conclusion of that meeting, as Hughes was leaving to return to Montreal, he was handed an initial draft of a proposed contract between PIO and Canadian for the marketing of the products. Hughes had not seen the draft before. Hughes stated that he could not respond thereto until he had returned to Montreal and reviewed the draft with officers of Canadian, one of whom was a Canadian attorney.

Back in Canada, the draft was given to Roy Flaherty and H. Digby Clarke, the two officers of the Canadian defendants, for their review. On July 7, 1973, Hughes and Flaherty met at the Montreal office of the parent of PIO namely PIA to negotiate the terms of a contract with Mr. Vito Altavilla, who was representing PIO and PIA in regard to the matter. At that meeting, some minor changes were made in the draft of the proposed contract and, as amended, an agreement was prepared and executed in PIA's office at Sherbrooke Street, Montreal, Canada. That is the July 7, 1973 agreement on which Delaware now seeks a declaratory judgment.

The July 7, 1973 agreement recited that Canadian had certain technology and know-how for the conversion of starch which was patented and for which patent applications had been filed; the products were denominated as Cytores under a Canadian Trade Mark. The agreement called for the formation of a joint-venture company to be called PLASTISTARCH INTERNATIONAL CORPORATION (Delaware herein) which would own the worldwide rights to Cytores, with the exclusion of Canada and the United States, to commercialize the product by means which would satisfactorily protect the technology. PIO agreed to form Delaware and make available to it the services of PIO's international network of offices and marketing know-how.

Canadian in turn agreed: to assign the said rights to Delaware, the assignment to cover all patents and applications therefor; to assign and make available to Delaware all the technical know-how etc. concerning

Cytores; to supply converter equipment if ordered by Delaware; and to train representatives of Delaware.

Delaware was incorporated on August 7, 1973. PIO contributed $25,000 to Delaware's capital for 52% of its common stock, and Canadian received 48% of the common capital stock for the assignments to be made. Thereafter during 1973, PIO undertook a limited marketing program for the products, consisting of some press releases and their exhibition at a trade show in Japan. After December 1973 the marketing program was terminated. PIO then withdrew for its own account all of the remaining capital of Delaware. It is uncontradicted that the 1975 Annual Report to Shareholders issued by PIA (PIO's parent) announced that:

As a result of economic conditions during [the year ended October 31, 1974, PIA] began concentrating primarily on exhibits, and discontinued licensing of new products and various joint venture arrangements. In accordance with this policy, during 1974, it discontinued the operations of . . . Plastistarch International Corporation [Delaware herein]

It is further documented and uncontradicted that in March of 1976, plaintiff Delaware's corporate charter was revoked by the State of Delaware for failure to pay its franchise taxes.

During the intervening time, in February 1975, the defendant, Canadian, licensed the Canadian and United States rights to the same patented technology to Boyd Scott & McDonald (BSM hereafter), a Canadian corporation with its principal place of business in Montreal. Under this 1975 agreement, BSM was obligated to use its best efforts to procure the cancellation of the 1973 worldwide license held by Delaware.

Apparently the 1975 agreement did not work out harmoniously either. In May 1977, Canadian informed BSM that its license to the worldwide use of the technology (which it would have acquired if the 1973 agreement had been cancelled) had lapsed. On September 2, 1977, PIO assigned its 52% of the common stock of Delaware and its interest, if any, in the license under the 1973 agreement, to Southgard, Ltd., a Canadian wholly-owned subsidiary of BSM. In October 1977, Southgard assigned to BSM whatever rights it had obtained from PIO in Delaware's stock and in the 1973 agreement. Shortly thereafter, on November 3, 1977, PIO made an assignment for the benefit of its creditors.

As PIO's ultimate assignee, BSM then revived the charter of Delaware by paying its back taxes. A Certificate of Renewal and Revival of Charter was filed on December 19, 1977.

Almost two years later, on September 17, 1979, Canadian notified BSM that the latter was in default of the 1975 agreement, which was operative for the United States and Canada. One week later, on September 24, 1979, Delaware instituted the present action against Canadian seeking a declaration of its alleged rights under the 1973 agreement.

■ Defendants brought on the motions described above, arguing that the real dispute herein is between BSM and defendants (all Canadian corporations), and not between plaintiff Delaware and defendants Canadian. As an alternative to this real-party-in-interest argument, defendants argued that if the assignment to BSM conveyed no stock or license rights, then defendants Canadian own 100% of plaintiff, not merely 48%, and there is an identity of interest and no controversy. Defendants Canadian argued that BSM's rights cannot be adjudicated in its absence, and that consequently it must be joined as an indispensable party. To do so, however, would destroy diversity jurisdiction under 28 U.S.C. § 1332(a)(2) and (c).[1] After hearing argu-

---

1. Section 1332(a)(2) provides federal diversity jurisdiction between "citizens of a State, and foreign states or citizens or subjects thereof." Section 1332(c) provides that a corporation is a citizen of the State of its incorporation and of the State of its principal place of business. There is no federal diversity jurisdiction of disputes between citizens of foreign states. *See, e. g., IIT v. Vencap, Ltd.,* 519 F.2d 1001, 1015 (2d Cir. 1975).

ment on this point, the Court on January 18, 1980, granted plaintiff leave to serve and file an amended complaint to make clear, if that were possible, that its cause of action did not require the presence of BSM for adjudication. Plaintiff Delaware thereafter filed an amended complaint and defendants renewed their earlier motions making the same arguments, that the Court lacked diversity jurisdiction because BSM was either the real-party-in-interest or an indispensable party. Defendants also renewed their arguments that personal jurisdiction could not be had over them in New York and that in any event, New York was not the proper venue for this action.

It appears clearly herein that Delaware has never transacted any business and never was present in New York and never received any services or goods in New York. There is no evidence of any presence or activity in New York on the part of Delaware from 1973 to the present. Counsel suggested the contemplation thereof but claimed on the oral argument before the Court that such contemplation was frustrated by the failure of Canadian to furnish the patented technical know-how in New York (and elsewhere, for that matter).

This factually as well as legally forecloses any basis for New York as a proper venue for this suit—none of the parties being present or doing business here and Delaware moreover being a Delaware incorporated company.

Additionally, there is no evidence on which it can be found that this Court has personal jurisdiction of either of the two Canadian corporate defendants.

Accordingly, New York is not a venue available to Delaware and at all events, this Court has not acquired personal jurisdiction of Canadian.

*Venue*

■ Under 28 U.S.C. § 1391(a) an action founded only on diversity may be brought in the District where all plaintiffs or all defendants reside, or where the claim arose. As the facts already establish, neither defendant resides in New York, neither was incorporated here, neither has a place of business, nor does business here. *See* 28 U.S.C. § 1391(c).

Further, the plaintiff does not reside here for venue purposes. The overwhelming majority of jurisdictions that have considered the question have determined that for purposes of venue, the residence of a plaintiff and the residence of a defendant are defined differently. 28 U.S.C. § 1391(c) by its terms applies only to corporate defendants in defining the corporation's venue-residence as "any judicial district in which it is incorporated or licensed to do business or is doing business". For venue purposes, a corporate plaintiff resides only at its place of incorporation. *Manchester Modes, Inc. v. Schuman*, 426 F.2d 629 (2d Cir. 1970) (Friendly, J.); *Tenneco Oil Co. v. Environmental Protection Agency*, 592 F.2d 897 (5th Cir. 1979); *Amoco Production Co. v. Department of Energy*, 469 F.Supp. 236 (D.Del.1969); Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3811 (1976). *But see Munsingwear, Inc. v. Damon₁ Coats, Inc.*, 449 F.Supp. 532 (D.Minn. 1978) (alternative ground for decision).

Moreover, since Delaware is not qualified to do business in New York and was not doing business in New York, it consequently could not claim residence in New York on the basis of doing business. Finally, there is no colorable argument that the claim arose here.

New York is therefore not an available venue hereof.

*Personal jurisdiction*

■ Plaintiff presents two contentions to support its claim of jurisdiction over defendants. The first is that the 1973 agreement was negotiated here. The facts, as detailed above, clearly establish that no negotiation either preliminary or substantial took place here. Plaintiff's reliance on *Liquid Carriers Corp. v. American Marine Corp.*, 375 F.2d 951 (2d Cir. 1967) does not aid it, in that the facts of this case clearly fail to rise to the level of the "substantial preliminary negotiations" that were held to be sufficiently extensive and purposeful to constitute the transaction of business.

Second, plaintiff argues that effective September 1, 1979 New York's CPLR § 302(a)1 extends jurisdiction to cover a non-resident defendant who "transacts any business within the state *or contracts anywhere to supply goods or services in the state*". (Emphasis supplied as to new material).

It is clear beyond doubt that Canadian did not contract to supply any goods or services in New York—there is no such contract and the 1973 joint venture agreement expressly excludes the United States and Canada from applicability to Delaware.

The amended complaint is dismissed, with costs.

So ordered.