### I. OLIVER ENGEBRETSON, INC., Plaintiff,

#### v.

### ARUBA PALM BEACH HOTEL & CASINO, Aruven, N.V., and Muzii & Associates, Inc., Defendants.

#### No. 83 Civ. 1552 (SWK).

United States District Court, S.D. New York.

June 4, 1984.

---

plaintiffs' breach of fiduciary duty claim as one based on an alleged dispute concerning the fidu-

ciary contracts.

Lieberman, Rudolph & Nowak by David A. Kalow, L. Michael Rudolph, New York City, for plaintiff.

Howard, Darby & Levin by Philip K. Howard, Harry George Hives, New York City, for defendants Aruba Palm Beach Hotel & Casino and Aruven, N.V.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

The above-captioned action is before this Court upon the motion of defendants Aruba Palm Beach Hotel & Casino and Aruven, N.V. ("the Aruba defendants") to dismiss for want of *in personam* jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, or, in the alternative, to dismiss pursuant to the doctrine of *forum non conveniens.* For the reasons stated below, the motion is denied.

### BACKGROUND

Aruven, N.V. ("Aruven") is a corporation organized under the laws of the Netherlands Antilles with its principal place of business in Aruba. Aruven owns three resort hotels on the island of Aruba. One of those hotels is the defendant Aruba Palm Beach Hotel & Casino ("Aruba Hotel"). The Aruba defendants are not qualified to do business in New York. They do not have, nor have they ever maintained, any offices or employees in New York, nor do they have a New York telephone number. They do not own any real property here. They do, however, have contractual arrangements with local travel agents and hotel representatives.

Engebretson[1] is an independent hotel representative in New York, apparently engaged in the business of representing resort hotels located primarily in the Caribbean. Engebretson flew to Aruba in August,

---

**1.** Plaintiff I. Oliver Engebretson, Inc. and Mr. Engebretson will both be referred·to as Enge- bretson herein, since for purposes of this motion, there is no relevant distinction.

1982. While in Aruba, Engebretson negotiated with the management of the Aruba Hotel and, on August 15, 1982, entered into an agreement to serve as the Aruba Hotel's representative in North America for two years. Under the agreement, Engebretson would solicit, make, and confirm reservations in the Aruba Hotel, would promote the Hotel, and would attend trade fairs to promote business and create demand for the Hotel. In return for Engebretson's representation, the Aruba defendants would pay Engebretson three percent of the gross revenues generated from North America, irrespective of the source of the business.

On or about August 24, 1982, the Aruba Hotel attempted to unilaterally modify the agreement. The Aruba Hotel sought to change the compensation arrangement with Engebretson so that Engebretson would receive five percent of the gross revenues generated by Engebretson. Engebretson refused to consent to this modification. Engebretson did, however, continue to represent the Aruba Hotel (although the adequacy of that representation is very much in dispute).

On October 20, 1982, the Aruba Hotel hosted a large reception at the Waldorf-Astoria in New York. The reception was to inform the travel industry of the recent change of name and ownership of the Aruba Hotel.[2] Approximately 200 travel agents, tour operators, and wholesalers were invited to this reception which was organized, planned, and arranged by Engebretson and others, including Tom Duffy, an employee of Caribbean American Investment Co., Inc. (a seemingly uninterested third-party)[3], and Kalish & Rice, the Hotel's advertising agency from Philadelphia.

After the reception, Paul Jaffe, an attorney from Philadelphia who represents managing company for the Aruba Hotel, met with Engebretson in another room at the Waldorf. Exactly what transpired at that meeting is in dispute. Engebretson claims that Jaffe had two letters with him, one purporting to modify the agreement and the other terminating it. Moreover, Engebretson claims that after he refused to accept any modification, Jaffe handed him the termination letter. Jaffe, on the other hand, denies the existence of any "modification" letter, and claims that he merely handed him the previously prepared termination letter. I find this dispute irrelevant for these purposes[4]—the bottom line is that Engebretson's relationship with the Aruba defendants was terminated on October 20 by the delivery, in New York, of a previously prepared letter of termination.

Shortly after Engebretson's termination, the Aruba defendants apparently secured the services of another hotel representative in New York—Reservation Systems, Inc. ("RSI"), located at 6 East 46th Street. It is uncontroverted that RSI performed, and continues to perform, for the Aruba Hotel essentially all of the functions that Engebretson was retained to perform—securing advertising, promoting the hotel, soliciting and confirming reservations there.

Engebretson brought this action alleging breach of contract against the Aruba defendants, and seeking damages and an accounting. The Aruba defendants made the within motion to dismiss for want of *in personam* jurisdiction. A third defendant, Muzii & Associates, Inc. ("Muzii"), is alleged to have tortiously interfered with the contractual relationship between Engebret-

---

**2.** Prior to June 18, 1982, the hotel had been known as the Aruba Sheraton Hotel & Casino and was part of the Sheraton chain.

**3.** Engebretson claims to have been told by the Aruba Hotel's attorney, Paul Jaffe, that Duffy was an employee of the Hotel. Jaffe denies ever making such a statement, and Duffy denies the substance of that statement. Engebretson's hearsay allegations are therefore unsupportable, and are rejected for the purposes of this motion.

*See Ziperman v. Frontier Hotel of Las Vegas,* 50 A.D.2d 581, 374 N.Y.S.2d 697 (2d Dep't 1975).

**4.** Even if Jaffe attempted to "negotiate" with Engebretson and modify the agreement according to a pre-determined, previously prepared letter, such conduct would not be enough to qualify as transacting business within New York. See discussion at p. 848, *infra.*

son and the Aruba defendants.[5] Muzii remains a defendant in this action.

## DISCUSSION

■ This Court has subject matter jurisdiction over this action pursuant to the diversity jurisdiction of the federal courts. 28 U.S.C. § 1332. In a diversity action, the scope of *in personam* jurisdiction (or, more accurately, "competence"—meaning the power *actually* granted to the Court by the governing lawmakers, *see Leab v. Streit*, # 83–5232, slip op. at 9–14 (S.D.N.Y. April 19, 1984)) is defined by the law of the forum state. *See Arrowsmith v. United Press Int'l*, 320 F.2d 219 (2d Cir.1963); *see also Leab v. Streit, supra.* Plaintiff claims that the Aruba defendants are amenable to suit in New York pursuant to either or both of sections 301 and 302 of the New York Civil Practice Law and Rules.

■ The burden of establishing the defendants' amenability to suit in this forum is on the plaintiff. *E.g., Sanders v. Wiltemp Corp.*, 465 F.Supp. 71, 75 (S.D.N.Y. 1979); *Ziperman v. Frontier Hotel of Las Vegas*, 50 A.D.2d 581, 582, 374 N.Y.S.2d 697, 700 (2d Dep't 1975). At this stage of the proceedings, plaintiff need only establish a *prima facie* case that defendants are amenable to suit here. *See United States v. Montreal Trust Co.*, 358 F.2d 239 (2d Cir.), *cert. denied*, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966); *Sanders*, 465 F.Supp. at 75.[6]

### 1. *Transacting Business*

■ Engebretson argues that this Court has the power to exercise jurisdiction over the Aruba defendants because they transacted business in New York, pursuant to N.Y.C.P.L.R. § 302. The Court does not agree.

Engebretson lists a series of purported contacts with New York in support of this argument: maintenance of a bank account; hosting of the change-of-name reception; attendance at other trade shows; and advertising. These arguments can be disposed of summarily. Section 302 provides in relevant part as follows:

> As to a cause of action *arising from* any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state ...

(emphasis added). Engebretson's breach of contract claim simply does not arise from any of these argued contacts.

Engebretson also cites the existence of the contract, the alleged "negotiation meeting," and the delivery of the termination letter in support of its claim to § 302 competence. The contract was negotiated and executed in Aruba; therefore, the existence of the contract does not provide this Court with authority under § 302. *See Plastistarch International Corp. v. Plastistarch Corp. Ltd.*, 484 F.Supp. 1312 (S.D.N.Y. 1980); *Pneuma-Flo Systems, Inc. v. Universal Machinery Corp.*, 454 F.Supp. 858 (S.D.N.Y.1978). Moreover, the alleged "negotiation meeting," even if it took place as Engebretson asserts, is not sufficient to confer § 302 power on this Court. Negotiation meetings within the state must either be of substantive importance in concluding the contract, *National Spinning Co., Inc. v. Talent Network, Inc.*, 481 F.Supp. 1243 (S.D.N.Y.1979), or essential to the ongoing relationship of the parties, *Pneuma-Flo*, 454 F.Supp. at 866, in order to satisfy the

---

**5.** Muzii is a Florida corporation which has served as marketing consultant for the Aruba defendants. Muzii made a similar motion pursuant to Rule 12(b)(2), but that motion was denied because Muzii had irretrievably waived any objections to personal jurisdiction in New York. *See I. Oliver Engebretson, Inc. v. Aruba Palm Beach Hotel & Casino*, 575 F.Supp. 1262 (S.D.N.Y.1984).

**6.** Of course, plaintiff bears the burden of ultimately proving the amenability of defendants to suit here by a preponderance of the evidence, and defendants will not be bound by any threshold findings made here. *Loria & Weinhaus v. H.R. Kaminsky & Sons*, 80 F.R.D. 494, 497 n. 4 (S.D.N.Y.1978).

requirements of § 302. Taking Engebretson's claims as true with regard to this meeting,[7] all that occurred was a meeting at which defendants attempted to modify the agreement in accordance with the unilaterally determined terms of a previously written letter. That hardly constitutes "meaningful negotiation" or ongoing discussion. Finally, the fact that defendants hand-delivered a termination letter to plaintiff in New York is insufficient to satisfy the requirements of § 302. *See Chertok v. Ethyl Corp. of Canada,* 341 F.Supp. 1251, 1253 (S.D.N.Y.1972); *see also Pneuma-Flo,* 454 F.Supp. at 865–66 (visits for plaintiff's benefit insufficient); *Concrete Detailing Services, Inc. v. Thomsson Steel Co., Inc.,* 411 F.Supp. 1021 (S.D.N.Y.1976) (conciliatory visit insufficient); *A.I.L. v. Symetrics Ind., Inc.,* 360 F.Supp. 1138 (E.D.N.Y.1973) (visits subsequent to execution of contract insufficient); *cf., Presidential Realty Corp. v. Michael Square West, Ltd.,* 44 N.Y.2d 672, 405 N.Y.S.2d 37, 376 N.E.2d 198 (1978) (last act marking formal execution of allegedly breached contract insufficient); *Harry Winston Inc. v. Waldfogel,* 292 F.Supp. 473 (S.D.N.Y.1968) (same).

▮ Engebretson's final argument under section 302 is that its own activities within the state are attributable to the Aruba defendants, and, therefore, the Aruba defendants transacted business within the state. Under New York law, the local representative, or agent, of a foreign defendant cannot rely on its own activities within the State to bootstrap long-arm jurisdiction over that non-domiciliary. *Haar v. Armendaris Corp.,* 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973). We are bound by that rule. *See Pneuma-Flo,* 454 F.Supp. at 863. Engebretson argues that this rule does not apply here because it was the "exclusive agent" of the Aruba defendants. It is unclear whether the appellation

"exclusive" is appropriate. Even Engebretson specially defines "exclusive" so that it applies "in that [Engebretson] was to receive a percentage of all bookings in the territory regardless of whether or not [Engebretson] obtained the customer." Plaintiff's Memorandum in Opposition, p. 2 n. *. Nowhere is it contended that the Aruba defendants were precluded from dealing with any other agents, or that Engebretson was limited to representing the Aruba defendants. It does appear that an exception to the bootstrap doctrine exists, in limited circumstances, for exclusive agents who either work for no other principal, *Hertz, Newmark & Warner v. Fischman,* 53 Misc.2d 418, 421, 279 N.Y.S.2d 97, 100 (Civ.Ct.N.Y.Co.1967), or engage in a continuing course of dealing with the principal, *Engelhardt v. Shields & Co.,* 50 Misc.2d 7, 269 N.Y.S.2d 238 (Dist.Ct. Nassau Co.1966). I do not find that the exception is applicable in the context of the brief,[8] limited contractual arrangement involved here; therefore, Engebretson cannot rely on its own activities in the State. Thus, the Aruba defendants did not transact business in New York sufficient to vest this Court with competence over them pursuant to § 302.

## 2. *Doing Business*

Plaintiff argues alternatively that this Court has the competence to exercise jurisdiction over the Aruba defendants because they *are* doing business in New York, pursuant to N.Y.C.P.L.R. § 301. The Court agrees.

▮ Under New York law, a foreign hotelier is doing business in this state for purposes of section 301, if a local representative, acting as the agent of the nondomiciliary, "does all the business which

---

**7.** It is appropriate at this stage to construe disputed facts most favorably to plaintiff as the party opposing the motion. *See Loria & Weinhaus v. H.R. Kaminsky & Sons, Inc.,* 80 F.R.D. 494, 497 (S.D.N.Y.1978).

**8.** The duration of the agency relationship is relevant to the determination whether to attri-

bute an agent's activity to the principal. *See Engelhardt,* 50 Misc.2d at 8, 269 N.Y.S.2d at 240 (ten or eleven months and continuing sufficient); *cf., Sanders,* 465 F.Supp. at 74 (six months insufficient for third-party to rely on against principal for purposes of § 301 determination).

the [foreign corporation] could do were it here by its own officials." *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 44, 227 N.E.2d 851, 853, *cert. denied*, 359 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967). What is required to constitute "all the business" requires a case by case analysis. As a general rule, "mere solicitation" of business within the state by the agent is not enough. *Miller v. Surf Properties, Inc.*, 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958). It has been said, however, that "once solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business.'" *Aquascutum of London, Inc. v. S.S. American Champion*, 426 F.2d 205, 211 (2d Cir.1970), *quoted in Sanders*, 465 F.Supp. at 73. In this case I find that the Aruba defendants, through their local agent, are doing that "little more [that] is necessary."

It is undisputed, at this stage, that RSI has a contractual agency relationship with the Aruba defendants. Among the duties and powers RSI has pursuant to that agency relationship is the responsibility for making and confirming reservations at the Aruba Hotel. Although a potential guest can contact the Hotel directly, that guest can also contact RSI and the agent can then bind the Hotel by confirming a reservation.

In the leading case in this area, the New York Court of Appeals held that contacts very much like those involved in this action were sufficient to warrant the exercise of authority under section 301. *Frummer*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851. In *Frummer*, the local agent was a corporate affiliate of the foreign hotelier that performed a variety of promotional services for the foreign principal. "High on the list of significant powers which the New York agent held was the ability to confirm reservations at the out-of-town hotel." *Sanders*, 465 F.Supp. at 73.

Defendants argue that *Frummer* precludes the exercise of authority here because RSI is an independent entity whereas the agent there was a corporate

affiliate. There is language in certain opinions indicating that some common ownership is vital. *See Loria & Weinhaus*, 80 F.R.D. at 500; *Delagi v. Volkswagenwerk, A.G.*, 29 N.Y.2d 426, 431, 328 N.Y.S.2d 653, 656, 278 N.E.2d 895, 896 (1972). However, common ownership is not required. As the Second Circuit has stated, "[t]he court in *Frummer* specifically disavowed any reliance upon the corporate relationship of the two Hilton subsidiaries other than that 'it gives rise to a valid inference as to the broad scope of the agency in the absence of an express agency agreement.'" *Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116, 120 (2d Cir.1967) (quoting *Frummer*, 19 N.Y.2d at 538, 281 N.Y.S.2d at 45, 227 N.E.2d at 854). *See also Delagi*, 29 N.Y.2d at 431, 328 N.Y.S.2d at 656, 278 N.E.2d at 897 ("the affiliate relationship ... was significant *only* as it gave rise to an inference of an agency relationship") (emphasis added).

I find that the presence of an agent in New York with the undisputed authority to bind the foreign principal by confirming reservations is sufficient to warrant a finding that the Aruba defendants are "doing business" in New York. *See Gelfand*, 385 F.2d at 120 ("Without confirmation of reservations by the New York agent this was 'mere solicitation'"); *see also Delagi*, 29 N.Y.2d at 433, 328 N.Y.S.2d at 657, 278 N.E.2d at 898 ("The nature of the agency relationship was clear ... since the New York agent was authorized to make final reservations.")

The decisive test, as enunciated in *Frummer*, is whether the local agent "does all the business which the [defendant foreign corporation] could do were it here by its own officials." 19 N.Y.2d at 537, 281 N.Y. S.2d at 44, 227 N.E.2d at 853. The court in *Gelfand* refined this test somewhat and based its decision on whether the local agent "provides services beyond 'mere solicitation' ... [that] are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would un-

dertake to perform substantially similar services." 385 F.2d at 121.

RSI has the authority to confirm reservations for the Aruba defendants and therefore performs "services beyond 'mere solicitation.'" Moreover, the importance of a local agent to the Hotel was described by the apparent alacrity with which RSI was retained to replace Engebretson upon the plaintiff's termination. Such prompt action by the Hotel to resume its presence in New York through a local agent leads inexorably to the conclusion that if the Hotel did not have a local agent, it "would undertake to perform substantially similar services" for itself. Therefore, I find that the Aruba defendants are amenable to suit in this court pursuant to section 301.[9]

■ Furthermore, I find that the exercise of power over the Aruba defendants pursuant to section 301 is consonant with the due process limitations established by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Aruba defendants have had a systematic course of dealings in New York through local agents for nearly two years, generating substantial income for the foreign principal. *See Gelfand*, 385 F.2d at 121. Moreover, the agents' activities here are even more substantial than those conducted, albeit "in house," and held sufficient in *Bryant v. Finnish National Airlines*, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965). Finally, the agents' activities here are substantially the same as those held sufficient in *Frummer*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967). Thus, defendants' motion to dismiss for want of personal jurisdiction is denied.

■ Defendants also move to dismiss pursuant to the doctrine of forum non conveniens. The Court does not find that such

a course is indicated here. The seminal case dealing with the doctrine is *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). There, the Court enumerated several factors to be considered in deciding whether to dismiss. Included among those factors, and relevant to this proceeding, were the following: 1) the interest of the litigants; 2) the ease of access to sources of proof; 3) the availability of compulsory process to secure the attendance of unwilling, and the cost of bringing in willing, witnesses; 4) the applicable law; and 5) any other practical problems or considerations. 330 U.S. at 508–9, 67 S.Ct. at 843. The Court cautioned, however, that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 508, 67 S.Ct. at 843.

■ In this case the plaintiff is a resident of New York. New York courts no longer articulate a steadfast rule precluding the application of forum non conveniens to suits initiated by New York citizens. *E.g., Silver v. Great American Ins. Co.*, 29 N.Y.2d 356, 328 N.Y.S.2d 398, 278 N.E.2d 619 (1972). Nonetheless, the plaintiff's residence here is a significant factor. This case is not comparable to a tort action classically calling for invocation of the forum non conveniens doctrine, where the plaintiff's residence is often a fortuitous circumstance. Rather this is a contract action, where the contract was formed in part because of the plaintiff's ties to the forum. Moreover, the significance of plaintiff's residence is compounded by the fact that a substantial portion of Engebretson's work under the contract at issue herein was to be performed in New York. The Court anticipates that testimony concerning Engebretson's performance (and the adequacy or inadequacy thereof) in New York will be adduced at trial. Thus, conduct in this state will be a focal point of the trial and sources of proof regarding that

---

**9.** Since the Aruba defendants' presence in New York under § 301 is based on the activities of RSI, the court need not address the defendants' argument that Engebretson is again bootstrapping its own activities into a basis for jurisdiction over the foreign principal in contravention of New York law. *See DelBello v. Japanese*

*Steak House, Inc.*, 43 A.D.2d 455, 352 N.Y.S.2d 537 (4th Dep't 1974); *Ladenburg, Thalmann & Co. v. Scalleat*, 86 Misc.2d 503, 383 N.Y.S.2d 168 (Civ.Ct.N.Y.Co.1976); *see also Pneuma-Flo*, 454 F.Supp. at 864; *but see Traub v. Robertson-American Corp.*, 82 Misc.2d 222, 368 N.Y.S.2d 958 (Sup.Ct. Nassau Co.1975).

are likely to be found here (for example, testimony from Mr. Duffy concerning the preparation for the change-of-name reception).

In that vein, certain likely non-party witnesses are in New York, or within this Court's subpoena power. For example, Mr. Duffy is in New York and Mr. Jaffe is in Philadelphia.

Finally, this Court is unaware of another forum where all the parties can litigate all the issues involved here. It is unclear whether Muzii is subject to suit in Aruba, and venue would be improper in Florida. *Cf., Atkinson v. Superior Court of Los Angeles County,* 49 Cal.2d 338, 316 P.2d 960 (1957) (Traynor, J.) (importance of forum as potentially only forum where all claims resolvable in determining whether defendants subject to suit there).

Thus, I do not find that the balance of conveniences tips decidedly in defendants' favor. Accordingly, defendants' motion to dismiss must perforce be denied.

In sum, the Aruba defendants' motion to dismiss for want of in personam jurisdiction is DENIED. The motion to dismiss pursuant to the doctrine of forum non conveniens is likewise DENIED.

SO ORDERED.