■ PUBLIC ADMINISTRATOR OF THE COUNTY OF NEW YORK, as Administrator of the Estate of ALMIR C. DE SOUZA, Deceased, Respondent, v ODECO, INC., Also Known as OCEAN DRILLING & EXPLORATION COMPANY, Appellant, et al., Defendants. PUBLIC ADMINISTRATOR OF THE COUNTY OF NEW YORK, as Administrator of the Estate of ALMIR C. DE SOUZA, Deceased, Respondent, v ODECO, INC., Also Known as OCEAN DRILLING & EXPLORATION COMPANY, Appellant, et al. Defendants. — (Appeal No. 13297N.) Order, Supreme Court, New York County (Ostrau, J.), entered June 12, 1981, reversed, on the law and in the exercise of discretion, and plaintiff-respondent's motion for discovery denied, without costs and without disbursements, and without prejudice to a new motion therefore, limited, however, to subjects not having to do with jurisdiction in personam over defendant-appellant. (Appeal No. 13298.) Order, Supreme Court, New York County (Pecora, J.), entered April 8, 1981, affirmed, without costs or disbursements. (Appeal Nos. 13297N-13298.) The order we affirm sustained in personam jurisdiction over defendant-appellant for reasons amply set forth in the opinion of Justice Pecora at Special Term (NYLJ, April 8, 1981, p 6, col 4). The discovery sought by plaintiff-respondent granted at Special Term, was as to subject matter now rendered academic by our disposition of the appeal from the motion addressed to jurisdiction (Appeal No.

13298), and we reverse accordingly. That disposition should not stand in the way of discovery sought in any other proper area. Concur — Sullivan, Markewich and Milonas, JJ.; Murphy, P. J., and Carro, J., dissent in part with respect to Appeal No. 13297N in a memorandum by Murphy, P. J., and both dissent in a memorandum by Murphy, P. J., with respect to Appeal No. 13298, the two of which follow:

Murphy, P. J., dissents in part with respect to Appeal No. 13297N: In view of my dissent in companion appeal numbered 13298, I would simply reverse and deny plaintiff's motion for discovery as academic.

Murphy, P. J., dissents with respect to Appeal No. 13298: The public administrator instituted this action to recover for the wrongful death of one Almir Cavalcante De Souza. The decedent was killed on October 4, 1975 while working upon the drilling vessel *Cyclone* which was stationed approximately 120 miles off the coast of Brazil. The decedent was a domiciliary of Brazil. It is not clear whether the decedent was a "seaman" or a "platform laborer" on the vessel at the time. Service in this proceeding was made on or about October 4, 1977 in New Orleans. A Deputy Civil Sheriff, named Bonura, of the Parish of Orleans has submitted an affidavit stating that he served a summons and complaint upon Odeco, Inc. (Odeco) through its agent, C.T. Corporation System (CT). An individual named J. Barnwell Phelps allegedly accepted service for CT on behalf of Odeco. The caption in this proceeding reads "Odeco, Inc., Also Known as Ocean Drilling & Exploration Company". CT has submitted an affidavit from one Peter Burke in which he states that only the complaint was served. As will be developed more fully below, Odeco and Ocean Drilling & Exploration Company (the parent) are different corporations. Special Term found that there were sufficient contacts to determine that the parent was doing and/or transacting business in New York State. Special Term then pierced the corporate veil between the parent and its subsidiary, Odeco, and found that the long-arm service in New Orleans was effective upon Odeco. Upon its motion, Odeco sought summary judgment on various grounds including lack of jurisdiction. The motion was supported by affidavits from (i) James L. Kilpatrick, president of Odeco, and (ii) Lewis H. Pitman, the assistant secretary of (a) Odeco, (b) Odeco Drilling, Inc., and (c) the parent. Essentially, Kilpatrick and Pitman denied that either Odeco or its parent did or transacted business in New York State. These officers attested to the fact that Odeco and its parent were Delaware corporations with their principal place of business in New Orleans. They averred that neither corporation had offices or representatives in New York. They further denied that the two corporations derived any revenue from contacts with New York. They noted that neither corporation kept records in New York. Kilpatrick and Pitman also alleged that the *Cyclone* was owned by Japan Odeco S.A. at the time of the occurrence. Japan Odeco was represented to be a Panamanian corporation flying that country's flag. Odeco owned 50% of Japan Odeco; the parent owned 100% of Odeco. These officers further asserted that the decedent had been hired by Brasdrill, a Brazilian corporation. It was their contention that the *Cyclone* had been chartered to Petrobras, a corporation established and controlled by the Brazilian government. Parenthetically, it should be noted that the present action has already been dismissed against Petrobras because of its sovereign immunity. Odeco stressed, through its officers, that the action should be dismissed as against it for lack of jurisdiction and failure to state a basis for relief. Carlos Bruni, the general manager of Petrobras' New York facility, confirmed Odeco's statements with regard to the ownership of the vessel and the employment of the decedent. He stated that Petrobras did not engage in any commercial activity in New York. Bruni admitted that Petrobras had leased the vessel from Storm

Drilling Co. His affidavit indicates that Petrobras entered into independent contracts with regard to the *Cyclone*. There is no hint in Bruni's affidavit that Petrobras was part of a joint venture with the parent or that it acted as agent for the parent in New York. Plaintiff's counsel, Kenneth Heller, submitted four affidavits in opposition to Odeco's motion and in support of his client's cross motion for that same relief. For the most part, these hearsay affidavits of counsel lack probative value. Counsel makes conclusory statements about every facet of this action without stating the source of his knowledge. For example, counsel describes how the decedent's death occurred and he concludes that the vessel was necessarily unseaworthy. He is unable to name the decedent's specific employer but he knows that it is (i) one of the Odeco companies, (ii) or Petrobras, or (iii) Brasdrill, or (iv) all those companies. Counsel charges that the parent is acting in a joint venture with (i) Petrobras, and/or (ii) Brasdrill, and/or (iii) Nippon Yusen Kaisha (NYK). Alternatively, he charges that one or more of those companies acted as the parent's agent in New York. Without setting forth the basis of his knowledge, he describes the amount of money in the parent's New York bank accounts and even relates the source of those funds. He observes that all relevant contracts were made in New York State. It would not be productive to continue this list of hearsay statements. Upon almost every topic of discussion, counsel's unsupported conclusions are contradicted by Kilpatrick, Pitman or some other individual with knowledge of the facts. Counsel's total lack of knowledge in this matter is most evident from the caption. Odeco and its parent are named as the same entity when they clearly have different names. Counsel acknowledged his lack of knowledge on several occasions when he asked that discovery should be had before Odeco's motion was considered upon the merits. For the following reasons, the action should be dismissed against Odeco without affording plaintiff any disclosure. First, conflicting affidavits were presented as to whether CT, Odeco's agent, was served with a summons in New Orleans. Normally, a traverse must be held to resolve the differences in affidavits relating to service. Therefore, at the very least, the jurisdictional issue of service should be referred to a special referee to hear and report. For the purposes of the following discussion, it will be assumed that the Sheriff did serve the summons in New Orleans. Second, the record does not contain any proof that the parent was "doing business" in New York under CPLR 301. Plaintiff was required to show that the parent was engaged in such a continuous and systematic course of "doing business" as to warrant a finding of its presence in this State (*Laufer v Ostrow*, 55 NY2d 305, 309-310). The parent was not "doing business" at the time of service simply because its stock was listed on the over-the-counter market. (*Robbins v Ring*, 9 Misc 2d 44; *Walker & Sons v Lehigh Coal & Nav. Co.*, 8 Misc 2d 1005). Likewise, the parent's ownership of New York bank accounts did not constitute the doing of business (*Hastings v Piper Aircraft Corp.*, 274 App Div 435, 438). Plaintiff also introduced a copy of a page from Moody's Industrial Manual. This page states that the parent and NYK are involved in a joint venture with regard to the *Cyclone*. Plaintiff's counsel also argues that the parent is acting through NYK in New York. This hearsay statement in the Moody's Manual is not substantiated by any independent evidence to show a connection between the parent and NYK. No affidavit is submitted by plaintiff from a principal in NYK. On the other hand, Kilpatrick and Pitman have detailed the parent's corporate structure and the ownership history of the *Cyclone*. No mention is made of NYK. Upon this state of the record, there is no valid reason to find that the parent is doing business in New York through NYK's representatives. Moreover, there is no competent proof in this record to show that the parent acted in a joint venture

with either Petrobras or Brasdrill. The same may be said for plaintiff's unsubstantiated claim that Petrobras and Brasdrill were agents for the parent. Similarly, let it merely be stated that the plaintiff has not shown that the parent "transacted business" under CPLR 302 (subd [a], par 1) (*Frummer v Hilton Hotels Int.,* 19 NY2d 533, cert den 389 US 923). There is no proof, for example, that any contract was executed in New York or that the decedent was hired in New York. It necessarily follows that the plaintiff has not demonstrated that the wrongful death action arose from any New York transaction. In passing, it should be emphasized that plaintiff makes no attempt to establish that Odeco directly "did" or "transacted" business in New York. The record is devoid of any specific contacts between Odeco and this State. Third, Special Term erroneously "pierced the corporate veil" between the parent and Odeco. As a general rule, the fact that one corporation owns all or the majority of the stock of another corporation does not destroy the identity of the latter as a distinct legal entity, even though the two corporations may have the same stockholders, or the same officers or directors, or use the same offices. The courts will look beyond the fiction of corporate entity and hold two corporations to constitute a single unit on legal contemplation, where one is so related to, or organized, or controlled by, the other as to be its mere agent, instrumentality, or alter ego. Courts frequently disregard corporate entities even where the subsidiaries are not mere instrumentalities of the parent corporations, as where it is necessary to prevent fraud or to avoid an unjust enrichment at the expense of a third party because of a parent's act (11 NY Jur [rev ed], Corporations, § 16, pp 195-197). In contending that the parent and Odeco should be treated as the same entity, the plaintiff relied upon a 1977 statement filed by the parent with the SEC. In the statement, the parent states that it owns and operates a fleet of drilling barges including the *Cyclone.* Based upon this general, introductory sentence in the 1977 statement, plaintiff would unhesitatingly pierce the corporate veil between the parent and all its subsidiaries. The sentence in question was obviously intended to describe the parent's activities effected through its subsidiaries and other holdings. The 1975 statement accurately reflects the fact that Japan Odeco owned and operated the vessel. Aside from the 1977 statement, plaintiff has shown that the parent and Odeco have common offices and officers. These factors, without more compelling proof, do not justify the conclusion that the corporations are one and the same entity. Furthermore, plaintiff has failed to demonstrate that the parent exercised such actual dominion and control over Odeco and Japan Odeco so as to warrant their treatment as one entity. Summarizing, Odeco's papers do contain minor discrepancies that are not critical to the disposition of its motion. Overall, plaintiff has not established that the operation of the *Cyclone* and the decedent's death were in any way connected with activities in New York State of Odeco or its parent. Thus, even if it were assumed that the summons was served in New Orleans, there is no predicate for jurisdiction under CPLR 301 or 302. Even if it were assumed that this court had jurisdiction, the doctrine of *forum non conveniens* should prompt this court to dismiss this matter in favor of Louisiana where Odeco and its parents have their principal place of business. Moreover, as mentioned in the Pitman affidavit, the witnesses to the occurrence are Brazilians who now reside in Brazil. Louisiana will be more accessible to those witnesses than New York. The only connection this case has with New York would appear to be the office of plaintiff's counsel. If jurisdiction were to be retained in New York, then Special Term's factual findings that (i) the decedent was a seaman and (ii) the Jones Act controlled should be vacated. Until it is established at trial that the decedent was a seaman, no factual determination should be made with regard

to his status or the applicability of the Jones Act. Accordingly, the order of the Supreme Court, New York County (Pecora, J.), entered April 8, 1981, which, *inter alia,* denied defendant Odeco's motion for summary judgment based upon lack of jurisdiction, should be modified, on the law, the motion should be granted, and as modified, the order should be affirmed, with costs.